PEOPLE ex rel. GLYNN, Comptroller, v. MERCANTILE SAFE
DEPOSIT CO.

(Supreme Court, Appellate Division, First Department. November 7, 1913.)

TAXATION (§ 906*) — TRANSFER TAX — SECURITIES — DELIVERY TO PERSONAL
REPRESENTATIVE—SAFE DEPOSIT COMPANY—"POSSESSION OR CONTROL."
    Defendant rented a safe deposit box to S. or O., who were severally
to have access to the same; O.'s right to be uninterrupted in case of the
death of S. Defendant's boxes so rented were in a vault room; the cus-
tomer retaining sole control of the contents of his box and means of ac-
cess, and defendant having no control except such as was involved in
guarding the premises and the means of access to the general vault. On
the death of S., O. removed from the box from time to time securities
belonging to himself and also to S., for whom he was executor. *Held,*
that defendant had neither possession nor control of the securities of
S. within the box, within Tax Law (Laws 1905, c. 368) § 227, prohibiting
a safe deposit company, having possession or control of assets belong-
ing to a decedent, from delivering the same to the executors except on
ten days' notice to the State Comptroller, and providing a fine for vio-
lation thereof.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1732–1736;
Dec. Dig. § 906.*]

Appeal from Trial Term, New York County.

Action by the People of the State of New York, on the relation of
Martin H. Glynn, Comptroller, against the Mercantile Safe Deposit
Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT,
DOWLING, and HOTCHKISS, JJ.

Robert P. Beyer, of New York City, for appellant.
Charles W. Pierson, of New York City, for respondent.

HOTCHKISS, J.   The action was brought to recover a penalty
under section 227 of the Tax Law as it stood on July 22, 1906 (Laws
1905, c. 368).

The defendant, the Mercantile Safe Deposit Company, was or-
ganized under chapter 613, Laws 1875 (since incorporated into section
300 of the Banking Law [Consol. Laws 1909, c. 2]), authorizing it to
act as bailee for the storage and safe-keeping of jewelry, plate, and
other valuables, and to guarantee their safety; also, to let vaults,
safes, and other receptacles for the use of its customers, and the
safe-keeping of their possession. Under this charter, the defendant
has conducted what are practically two distinct classes of business—a
storage business and a safe and box renting business. In the course
of the former, the defendant receives articles to be stored, issues a
receipt therefor, and takes manual possession thereof; the articles
being placed in vaults to which representatives of the company alone
have access. On the surrender of the receipt, the articles covered
thereby are delivered to the owner. In the business of renting, the
defendant rents to its customers vaults, safes, and boxes, all of which
are contained in a larger vault or room to which access is had through
a gate guarded by one of defendant's employés. The customer re-

---

ceives the key or fixes the combination of the lock to his particular vault, safe, or box, and during the period of the letting has sole control of the only means of access thereto, and uses the same as a place. of safe-keeping for whatever valuables he chooses to place therein; such valuables never coming into the manual custody of the company, and the company having no control over the same whatsoever, except such as is involved in guarding the premises and the means of access to the general vault.

Through the agency of one Osborne, in April, 1897, the defendant rented a safe, which was recorded on defendant's books in the name of "Russell Sage or Charles W. Osborne," who were severally to have access to the same; Osborne's right of access to be uninterrupted in the event of Sage's death. Sage never visited the safe, but Osborne used it constantly, putting in and taking out securities. On July 22, 1906, Sage died, a fact which was almost immediately brought to the knowledge of defendant's officers. Thereafter Osborne's use of the safe continued as theretofore, and defendant did nothing to interfere with his removing any of the valuables contained therein, and gave no notice of any kind to the State Comptroller. Although defendant had no knowledge whatsoever, at any time, of the contents of the safe, in fact, at the time of Sage's death, there was contained therein securities belonging to Sage individually, securities belonging to Osborne individually, and securities belonging to persons who had pledged the same to Sage as collateral for loans made by him, but under circumstances which gave Osborne, in the event of Sage's death, the right to receive payment of the debt and surrender the collateral. These various securities were contained in one or more tin boxes.

After Sage's death, Osborne, who became one of his executors, continued to look after his loans, and from time to time, as required, took away securities which had been pledged to Sage, but none of the securities belonging to Sage personally were removed, save as some of them may have been contained in a tin box in which some of Osborne's securities or some of the pledged securities were kept, which tin box was taken by Osborne to his office for use in the business of the day, and was returned at the end of the day with Sage's individual securities intact.

At a date suiting his earliest convenience, a representative of the State Comptroller visited the safe in company with a representative of the Sage estate, and inspected all of the contents belonging to Sage. Proceedings to fix the transfer tax on the Sage estate were duly begun and concluded, and the tax was duly paid in full.

Section 227 of the Tax Law contains the following:

"No safe deposit company * * * having in possession or under control, securities, deposits, or other assets belonging to or standing in the name of a decedent * * * including the shares of the capital stock of, or other interests in the safe deposit company * * * making the delivery or transfer herein provided, shall deliver or transfer the same to the executors, administrators or legal representatives of said decedent, or to the survivor or survivors, when held in the joint names of a decedent and one or more persons, or upon their order or request, unless notice of the time and place of such intended delivery shall personally be served upon the State Comptroller at

least ten days prior to said delivery or transfer; nor shall any such safe deposit company * * * deliver or transfer any securities, deposits or other assets belonging to or standing in the name of a decedent, * * * without retaining a sufficient portion or amount thereof to pay any tax and interest which may be assessed on account of the delivery or transfer of such securities, deposits or other assets. * * * And it shall be lawful for the said State Comptroller, personally or by representative, to examine said securities, deposits or assets at the time of such delivery or transfer."

For a failure to serve notice or allow the examination provided for, and for a failure to retain sufficient of the securities or assets to pay the tax, the offender is made liable for the full amount of the tax with interest, "and in addition thereto, a penalty of not less than five or more than twenty-five thousand dollars."

There are several grounds upon which we might affirm the judgment appealed from, but we prefer to put our decision on the broad ground that the statute does not cover any such situation as the evidence discloses in this case. It is not necessary for us to resort to the rule of strict construction, applicable to statutes under which penalties are sought to be enforced, for in no legal sense can the defendant be said to have had "possession" or "control" of any of Sage's securities. In a limited sense, it had the custody of such securities because of the relation which it occupied to the safe in which they were contained. Having neither "possession" nor "control" of the securities, the statute imposed no duty whatsoever upon the defendant, nor could it have obeyed the statute without invading the legal rights of its customer. The relation between the defendant and its customer, whether in this case he be regarded as Osborne and Sage jointly or severally, may have some elements comparable to those in a case of bailment; but the legal status of the parties seems to me to bear a closer analogy to that arising from the relation which exists between tenants of a general office building and the landlord thereof, who keeps within his control and under his care and protection the common means of access to the building and to the suites of offices therein, but as to which, subject to any regulations that may have been established by the landlord, the rights of the tenants are exclusive.

So far as I can see, the defendant in this case had no more "possession" of or "control" over the securities contained in the box in question, than such a landlord has over securities contained in a safe belonging to one of his tenants and contained in the private office of the latter. The situation of the defendant with respect to securities contained in safes or other receptacles of deposit rented to its customers was manifestly different from the relation which it occupied toward those who made physical deposit of valuables with defendant, for which a receipt was issued. In every such case, the defendant was clearly a bailee, having physical custody of the articles with power to control the delivery thereof.

The judgment and order should be affirmed, with costs. All concur.