# NATIONAL SAFE DEPOSIT COMPANY *v.* STEAD, ATTORNEY GENERAL OF THE STATE OF ILLINOIS.

## ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 138.   Argued December 16, 1913.—Decided January 5, 1914.

The word "possession" is more or less ambiguous, and is interchangeably used to describe both actual and constructive possession; and not decided in this case whether the contents of a safe deposit box are in possession of the renter or of the Deposit Company.

The State has power to regulate the incidents of distribution of property within the State belonging to decedents, and can prescribe times and conditions for delivery thereof by safe deposit companies; and a statute operating to seal safe deposit boxes for a reasonable period after the death of the renter is not an unconstitutional deprivation of property without due process of law, and so *held* as to § 9 of the Inheritance Tax Law of Illinois of 1909.

Such a statute does not impair the obligation of the charter of a safe deposit company if it provides the conditions under which delivery shall be made to the proper parties within a reasonable period.

The prohibition in the Fourth Amendment against unreasonable searches and seizures does not apply to the States. *Lloyd* v. *Dollison*, 194 U. S. 445.

Contracts for joint rental of safe deposit boxes are made in the light of the State's power to legislate for the protection of the estate of any joint renter, and a statute preventing withdrawal of contents for a reasonable period does not impair the contract between the deposit company and the renters.

The renter of a safe deposit box cannot object to a state statute affecting his right to open the box after death of a joint renter which was in force when the rental contract was made.

250 Illinois, 584, affirmed.

By the act of July 1, 1909, the Illinois legislature passed an Inheritance Tax Law like that considered in *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283. The ninth section of the statute provides in substance:

That no safe deposit company, corporation or person

having in possession or under control securities or assets belonging to or standing in the name of a decedent, or in the joint name of the decedent and another person, or in the name of a partnership of which he was a member— shall deliver such assets, to the legal representative of the deceased or to the survivor of the joint-holders or to the partnership of which he was a member, without ten days' notice to the Attorney General and Treasurer of the State, who were authorized to examine the securities at the time of the delivery. It was further provided that no delivery should be made unless such holder should retain a sufficient portion of the assets to pay the state tax thereafter assessed, unless such state officers gave consent in writing. Failure to give the notice or to retain such amount rendered the deposit company, corporation or person, liable for the tax and to a penalty of $1,000.

On March 15, 1910, the National Safe Deposit Company filed in the Circuit Court of Cook County, Illinois, a bill against the Treasurer and Attorney General, alleging that the Company was incorporated in 1881 to do a safe deposit business and that in pursuance of its charter it had erected a building with large vaults into which 13,291 safe deposit boxes had been built and 9,702 rented—317 to partnerships and 4,104 were held jointly by more than one person. That prior to July 1, 1909, it had made yearly contracts for the rental of said boxes, most of which were still of force. The rent contracts recited that in consideration of $——— paid, the Company "had rented to ——— safe No. ——— in the vaults of this company for the term of one year," and that its liability was limited to the exercise of ordinary diligence in preventing the opening of the safe by any person other than the renter or his duly authorized representative. "No one except the renter, or his deputy to be designated in writing on the books of the company, or in case of death, his legal representative, to have access to the safe." . . . No renter will be

permitted to enter the vaults except in the presence of the vaultkeeper. In case of loss of key or combination the lock will be changed at the expense of the renter. . . .

The bill alleged that the safes could be opened only by two keys, or two combinations, one of which keys or combinations was held by or known only to the renter, the other being held or known only by the company's agents. So that it required the joint act of the customer and the Company to secure access to the contents,—the Company having no right or means of access to the box itself, nor did it possess any knowledge or information as to the ownership of the securities deposited therein.

The bill further alleged that notwithstanding these facts, the defendants insisted that the Deposit Company had such possession or control of the contents as to make it incumbent upon it to prevent access thereto by all persons for ten days after the death of the sole or joint-renter; that this deprived the Deposit Company of the right to do the business for which it had been chartered, made it break its contract that it would allow no one except the renter or his agent or representative to have access to the boxes; interfered with its business by depriving the representative and survivor of their right to use the box and contents; imposed upon the Deposit Company the risk of determining who was the owner of the contents of the box and imposed the duty of acting as a tax-collecting agent for the State. The bill also alleged that the Company had been threatened with suits by depositors if it yielded to the command of such void act. In order to prevent a multiplicity of suits and to avoid the heavy statutory penalties the Company prayed that the defendants be enjoined from enforcing the statute against it.

The defendants' demurrer was sustained. That ruling was affirmed by the Supreme Court of Illinois, three judges dissenting (250 Illinois, 584). The case was then brought here by writ of error.

*Mr. George Packard* and *Mr. John S. Miller,* with whom *Mr. Merritt Starr* was on the brief, for plaintiff in error:

The relation of bailor and bailee does not exist between the safe deposit company and its customers; it is rather that of lessor and lessee of a diminutive room called a box. *Tullock* v. *Mulvane,* 184 U. S. 513.

Only in exceptional cases does the company assume a right of forcible entry.

The elements of possession, control and bailment are absolutely wanting. *Union Trust Co.* v. *Wilson,* 198 U. S. 530, 537; *Moore* v. *Mansfield,* 182 Massachusetts, 302; 2 Ency. Sup. Ct. Reps. 783; Story on Bailments (9th ed.), § 2; Jones on Bailments, 1; Schouler's Bailments, § 2 · *Security Warehousing Co.* v. *Hand,* 206 U. S. 415, 421.

The State has no vested financial right in the estate or property by which the tax is measured. *Kochersperger.* v. *Drake,* 167 Illinois, 122; *Merrifield* v. *The People,* 212 Illinois, 400; *Knowlton* v. *Moore,* 178 U. S. 41, 47; *Magoun* v. *Ill. Savings Bank,* 170 U. S. 283; *Home Ins. Co.* v. *New York,* 134 U. S. 594; *Flint* v. *Stone-Tracy Co.,* 220 U. S. 107, 162.

Where an impairment of contract or a deprivation of property rights without due process are relied upon, this court will determine for itself the existence and nature of the contract or the property right. *Hoadley* v. *San Francisco,* 124 U. S. 645; *Scott* v. *McNeal,* 154 U. S. 34, 45.

The statute deprives the company of the right to pursue a lawful business, free from legislative burdens which are not imposed through such police regulations as are consistent with constitutional guaranties. The right to contract is property in this sense.

Section 9 of the act imposes possession, control and power of transfer. It incorrectly assumes that a deposit

company has in its possession or under its control the contents of its rented boxes and can deliver or transfer the same.

"Possession" means exercise of power over a corporate thing, at pleasure, to the exclusion of all others. *Union Trust Co.* v. *Wilson*, 198 U. S. 530, 537; *Rice* v. *Frayser*, 24 Fed. Rep. 460, 463; *Gilkeson-Sloss Co.* v. *London*, 53 Arkansas, 403; *Smith* v. *Race*, 76 Illinois, 491.

"Control" has no legal or technical meaning apart from its popular sense, and is synonymous with "manage." *Ure* v. *Ure*, 185 Illinois, 216, 218.

Taking possession and control and the right to possession and control from the box lessee's personal representative and bestowing it on the safe deposit lessor against its consent, in direct conflict with the basic principle of the safety deposit business, is a legislative interference amounting to a deprivation without process of law, of the latter's right to carry on its lawful business. *State* v. *Peel Splint Co.*, 36 W. Va. 856; *State* v. *Goodwill*, 33 W. Va. 179; *Allgeyer* v. *Louisiana*, 165 U. S. 589; *Gulf &c. Ry.* v. *Ellis*, 165 U. S. 150, 154; *Carroll* v. *Greenwich Ins. Co.*, 199 U. S. 409; *Braceville Coal Co.* v. *People*, 147 Illinois, 69.

A lawful vocation is not to be arbitrarily and vexatiously burdened. *People* v. *Steele*, 231 Illinois, 351.

There is no process of law. The mere passage of the act making interference with plaintiff in error's business possible is not due process of law. *Davidson* v. *New Orleans*, 96 U. S. 97, 102; *Hurtado* v. *California*, 110 U. S. 516, 535; *Smyth* v. *Ames*, 169 U. S. 527.

The privilege of contracting is both a liberty and a property right. *Matthews* v. *People*, 202 Illinois, 401; *Williams* v. *Fears*, 179 U. S. 270, 274; *Bailey* v. *People*, 190 Illinois, 28, 33.

To force an office or duty on one against his will offends the right of contract.

The law makes the safe deposit company in effect a trustee of its customers' property.

To impose upon one a trusteeship without his consent, deprives him of his property right of contract. *Bethune v. Dougherty*, 21 Georgia, 257; Underhill on Trusts (Am. ed.), 190; Perry on Trusts, § 259; 28 Am. & Eng. Ency. of Law, 971; 39 Cyc. 77, 252; *Taylor v. Holmes*, 14 Fed. Rep. 498, 509; Beckett, Trusts & Trustees, § 548.

As lessors of rented space, there is unjust discrimination and arbitrary action of government, in imposing burdens on them not placed on other lessors of space. *Missouri v. Lewis*, 101 U. S. 22, 31; *Barbier v. Connolly*, 113 U. S. 27, 31; *Hayes v. Missouri*, 120 U. S. 68, 71; *Duncan v. Missouri*, 152 U. S. 377; *Gulf &c. Ry. v. Ellis*, 165 U. S. 150, 165.

The legislative grant to carry on the business of safety deposit is impaired. The act is not a regulation of a charter right. *Venner v. Chicago City Ry.*, 246 Illinois, 170, 176.

The existence, scope and effect of the contract claimed to be impaired, is open for determination by this court, as part of the Federal question involved. *Mobile &c. R. R. v. Tennessee*, 153 U. S. 486, 494; *Douglas v. Kentucky*, 168 U. S. 488, 502; *Louisville Gas Co. v. Citizens Gas Co.*, 115 U. S. 683, 697; *St. Paul Gas Co. v. St. Paul*, 181 U. S. 143; *Terre Haute &c. R. R. v. Indiana*, 194 U. S. 579, 589; *Powers v. Detroit &c. R. R.*, 201 U. S. 543, 556.

The act deprives safe deposit companies of their property right to pursue a lawful calling by the unconstitutional invasion of their customers' rights. *Lampasas v. Bell*, 180 U. S. 276.

The company is directly affected by the unconstitutional operation of the law. The outrage of its customers' rights destroys its business. *Chadwick v. Kelley*, 187 U. S. 540, 547; *Hooker v. Burr*, 194 U. S. 419; *Standard Stock Food Co. v. Wright*, 225 U. S. 540, 550.

Much of the business of safety deposit is with joint box renters. A surviving joint box renter, having a right of exclusive access to the joint box, by being denied access to his own property, is deprived of liberty and property without due process and is denied the equal protection of the laws. *City* v. *Wells*, 236 Illinois, 129, 132.

The superimposed construction of the act that the law extends to surviving business partners of business co-partnerships holding boxes in the partnership name, is unconstitutional. Where one is clothed with the State's powers, his acts are those of the State. *Raymond* v. *Chicago Traction Co.*, 207 U. S. 20, 35; *Chicago &c. R. R.* v. *Chicago*, 166 U. S. 233.

That the purpose of the act is to effectuate the ascertainment and collection of a tax, does not justify its summary disregard of constitutional rights.

Extreme departures from law and justice are not permitted even in the case of tax collection. *Turpin* v. *Lemon*, 187 U. S. 51, 58; *C., B. & Q. Ry.* v. *City*, 166 U. S. 226, 236; *Henderson Bridge Co.* v. *Henderson*, 173 U. S. 615; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 563.

The citizen, be he individual or corporation, must be protected from the arbitrary action of government. *Twining* v. *New Jersey*, 211 U. S. 101.

*Mr. Patrick J. Lucey*, Attorney General of the State of Illinois, with whom *Mr. Lester H. Strawn* was on the brief, for defendants in error:

The charter rights of plaintiff in error are qualified and limited by § 9 of the General Incorporation Act then in force, which provided that the General Assembly shall at all times have power to prescribe such regulations and provisions for corporations formed under the act as it may deem advisable. *Danville* v. *Water Co.*, 178 Illinois, 299, 306; *Water Co.* v. *Freeport*, 180 U. S. 587, 596; *Union Traction Co.* v. *Chicago*, 199 Illinois, 484, 538; *People* v.

*Rose,* 207 Illinois, 352; *White Machine Co.* v. *Harris,* 252 Illinois, 361.

This court will follow the construction placed upon such a statute by the Supreme Court of the State of Illinois. *Covington* v. *Kentucky,* 173 U. S. 231, 237.

The safe deposit company is in the position of a bailee for hire. *Mayer* v. *Bransinger,* 180 Illinois, 110; *Lockwood* v. *Manhattan Storage Co.,* 50 N. Y. Supp. 974; *Cussen* v. *So. Cal. Savings Bank,* 133 California, 534; *Roberts* v. *Safe Deposit Co.,* 123 N. Y. 57; *Safe Deposit Co.* v. *Pollock,* 85 Pa. St. 391.

The act does not make the safe deposit company an involuntary tax collector. *Carstairs* v. *Cochran,* 193 U. S. 10; *United States* v. *B. & O. R. Co.,* 17 Wall. 322; *National Bank* v. *Commonwealth,* 9 Wall. 353; *Citizens National Bank* v. *Kentucky,* 217 U. S. 443; 2 Cooley on Taxation (3d ed.), 832.

Statutes have frequently required agents to return for taxation property in their possession, and made such agents liable for the tax if they surrender the property without the tax thereon being paid. *Walton* v. *Westwood,* 73 Illinois, 125; *Ottawa Glass Co.* v. *McCabe,* 81 Illinois, 556; *Lockwood* v. *Johnson,* 106 Illinois, 334.

The right to take property, either real or personal, by inheritance or by bequest or devise is purely a statutory right and one which rests wholly within legislative enactment, and the State, acting in its sovereign capacity, by appropriate legislation, may regulate and control the devolution of property after the death of the owner. *Kochersperger* v. *Drake,* 167 Illinois, 122; *In re Speed,* 216 Illinois, 23; *In re Mulfords,* 217 Illinois, 242; *In re Graves,* 242 Illinois, 212; *Magoun* v. *Ill. Tr. & Sav. Bank,* 170 U. S. 283.

Where there is a succession tax due the State, the State has a vested interest. *In re Stanford,* 126 California, 112; *In re Graves,* 242 Illinois, 212; *Magoun* v. *Ill. Tr. & Sav. Bank,* 170 U. S. 283.

As to contracts made after the act complained of was passed, the act is not contrary to the impairment clause of the Constitution. *Lehigh Water Co.* v. *Easton,* 121 U. S. 388; *Blackstone* v. *Miller,* 188 U. S. 189.

Inspection has always been permitted. See Succession Duty Act of England of 1853, 16 & 17 Vict., c. 51, § 49; English Finance Act of 1894, § 8; Norman's Digest of Death Duties (3d ed.), 2, 174.

See also Illinois Administration Act of 1845, Rev. Stat. of Illinois, 1845, c. 109, par. 90, p. 556. Also the act of 1869, Hurd's Rev. Stat., 1912, c. 3, pars. 86–9, pp. 25–6.

The unreasonable search and seizure provision of the Fourth Amendment does not prevent a State from adopting effectual means to collect a tax which it has imposed. *Flint* v. *Stone-Tracy Co.,* 220 U. S. 107, 176; *Int. Com. Comm.* v. *Brimson,* 154 U. S. 447; *Int. Com. Comm.* v. *Baird,* 194 U. S. 25.

Any legal procedure enforced by public authority whether sanctioned by age and custom or newly devised in the discretion of the legislature in furtherance of the general public good must be held to be due process of law. *Hurtado* v. *California,* 110 U. S. 537; *Davidson* v. *New Orleans,* 96 U. S. 97; *Flint* v. *Stone-Tracy Co.,* 220 U. S. 107.

The mere temporary invasion of one's possession to determine a right is not the taking of property without due process of law. *Montana Co.* v. *St. Louis Mining Co.,* 152 U. S. 161.

The liberty of contract guaranteed by the court against deprivation without due process of law is the liberty of natural and not artificial persons. *Western Turf Assn.* v. *Greenburg,* 204 U. S. 359, 363; *Northwestern Life Ins. Co.* v. *Riggs,* 203 U. S. 243, 255.

MR. JUSTICE LAMAR, after making the foregoing statement of facts, delivered the opinion of the court.

The Illinois Inheritance Tax Law operates to seal safe

deposit boxes for at least ten days after the death of the renter. In view of the uncertainty as to who might own the contents of boxes, standing in the joint name of the deceased and others, the statute sealed their boxes also for a like period. The act further provided that in neither case could the securities be removed except after notice to officers designated by the State, and even then the Company was required to retain possession of enough of the assets to pay the State's tax. The Deposit Company insists that this statute violated the Fourteenth Amendment, for that, without due process of law, it imposed upon the Company a duty as to property over which it had no control; required it to assume the risk of determining who was the true owner, and forced upon it the obligations and liabilities of a tax-collecting agent of the State. In the court below and on the argument here, the validity of the section under review was said to depend upon the relation between the Company and the renter—it being argued for the State that the contract was one of bailment where, on the death of the bailor, the Deposit Company, as bailee, was bound to surrender the securities to the owner or person having a right thereto, one of whom, in each case, was the State to the extent of its tax. On the other hand, the complainant insisted that if there was no possession in fact there could be no possession in law; and that if no possession existed it was beyond the power even of the legislature to charge the Company with liabilities that could only arise out of a possession actually existing.

This is one of that class of cases which illustrate the fact that, both in common speech and in legal terminology, there is no word more ambiguous in its meaning than Possession. It is interchangeably used to describe actual possession and constructive possession which often so shade into one another that it is difficult to say where one ends and the other begins. *Union Trust Co. v. Wilson,* 198 U. S. 530, 537. Custody may be in the servant and pos-

session in the master; or title and right of control may be in one and the property within the protection of the house of another, as in *Bottom* v. *Clarke,* 7 Cush. 487, 489, where such possession of a locked trunk was held not to include possession of the contents. So that, as pointed out by Pollock and Wright in their work on the subject, controversies arising out of mixed possession have inevitably led to many subtle refinements in order to determine the rights of conflicting claimants, or to lay the proper charge of ownership in prosecutions for larceny of goods belonging to one in the custody of another or found by the defendant.

In the present case, however, the Federal question presented by the record does not call for a decision as to the exact relation between the parties during the life of the renter,—whether there was a strict bailment; whether the renter was in possession of the box with the Deposit Company as guard over the contents; whether the property was in the custody of the Company with the renter having a license to enter the building and remove the securities; or whether, as held in *People* v. *Mercantile Safe Deposit Co.* (Sup. Ct. App. Div. 143 N. Y. Supp. 849), construing a similar statute of New York—the relation was that which exists between tenants and landlord of an office building who keeps under his control the general means of access to the building and offices therein, but as to which offices and their contents, the rights of the tenants are exclusive. The Illinois Supreme Court held that the relation created by the Deposit Company's contract was that of bailor and bailee. That construction by the state court is controlling, unless, as claimed by the complainant, it makes the statute violate the Fourteenth Amendment as being an arbitrary attempt to create liabilities arising out of possession, where there was no possession in fact.

Certainly the person who rented the box was not in actual possession of its contents. For the valuables were

in a safe built into the company's vault and therefore in a sense "under the protection of the house." The owner could not obtain access to the box without being admitted to the vault, nor could he open the box without the use of the company's master key. Both in law, and by the express provisions of the contract, the company stood in such relation to the property as to make it liable if, during the lifetime of the owner, it negligently permitted unauthorized persons to remove the contents, even though it might be under color of legal process. *Roberts* v. *Safe Deposit Company*, 123 N. Y. 57; *Mayer* v. *Brensinger*, 180 Illinois, 110. After his death, it would be likewise liable if it permitted unauthorized persons, be they heirs, legal representatives, or joint-renters, to take the property of the decedent. In the exercise of its power to provide for the distribution of his property, the State could make it unlawful, except on conditions named, for his personal representative to receive or the holder to deliver, effects belonging, or apparently belonging, in whole or in part, to the deceased. As the State could provide for the appointment of administrators, for the distribution to heirs or legatees of all the property of the deceased and for the payment of a tax on the transfer, it could, of course, legislate as to the incidents attending the collection of the tax and the time when the administrator or executor could take possession. If, before representatives were appointed any one, having the goods in possession or control, delivered them to an unauthorized person he would be held liable as an executor *de son tort*. The fixing by this statute of the time and condition on which delivery might be made by a deposit company was also, in effect, a limitation on the right of the heir or representatives to take possession. If they had no right to receive except on compliance with the statutory conditions, neither could the Safe Deposit Company, as bailee or custodian, surrender the contents except upon like compliance with statutory conditions.

The contention that the Company could not be arbitrarily charged with the duty of supervising the delivery and determining to whom the securities belonged is answered by the fact that in law and by contract it had such control as to make it liable for allowing unauthorized persons to take possession. Both by the nature of its business and the terms of its contract it had assumed the obligation cast upon those having possession of property claimed by different persons. If the parties could not agree as to who owned the securities the Company had the same remedy by Bill of Interpleader that was afforded all others confronted with similar conditions. There was certainly nothing arbitrary or unreasonable in compelling one, who had received such control of property from another, to surrender it after his death only to those having the right thereto. Nor was there any deprivation of property, nor any arbitrary imposition of a liability, in requiring the Company to retain assets sufficient to pay the tax that might be due to the State. There are many instances in which, by statute, the amount of the tax due by one is to be reported and paid by another—as in the case of banks required to pay the tax on the shares of a stockholder. *National Bank* v. *Commonwealth,* 9 Wall. 353, 363. These conclusions answer the other constitutional objections and make it unnecessary to deal with each of them separately at length.

It is contended that the statute impaired the complainant's charter power to do a safe deposit business. But it no more interferes with the right of the Company to do that business than it does with the right of a private person to contract to take possession or control of securities belonging to another. But, having regard to the radical change wrought by the death of the owner and the subsequent duty to make delivery to one authorized by law to receive possession, the statute points out when and on what conditions such delivery may be made to the per-

sonal representative, surviving partners or persons jointly interested.

The objection that the act, in directing the state officers to inspect the contents of the box, operates as an unreasonable search and seizure raises no Federal question, since the prohibition on that subject in the Fourth Amendment, does not apply to the States. *Ohio ex rel. Lloyd* v. *Dollison,* 194 U. S. 445, 447.

The claim that the statute compels the company to break its contract with joint-renters and deprives the latter, for ten days, of access to the box and the right to use it or remove the contents is without merit. The Company, joint-renters or firms, each made the contract in the light of the State's power to legislate for the protection of the estate of any one of the joint-renters or partners, that might die during the term. As it now appears that all of the rentals were from year to year, and that all had expired before final hearing and were renewed after the passage of the law, it can also be said that all such contracts of joint-rental are made in the light of the provisions of this particular statute. The boxes were leased with the knowledge that the State had so legislated as not only to protect the interests of one dying after the rental, but also to secure the payment of the state tax out of whatever might be found in the box belonging to the deceased. The inconvenience was one of the not unreasonable incidents of the joint-relationship.

*Judgment affirmed.*