EMMA L. MOLLER, Respondent, *v.* LINCOLN SAFE DEPOSIT COMPANY, Appellant.

First Department, November 3, 1916.

Injunction — safe deposit box rented jointly — injunction restraining safe deposit company from preventing free access to survivor — adverse claim by representative of decedent — when mandatory injunction should not issue.

Although persons who rented safe deposit boxes jointly signed an agreement that, in the event of the death of either, the survivor should have the privilege of free access, *it seems*, that the safe deposit company, being to some extent a bailee, has a standing to resist the issuance of a mandatory injunction which restrains it from preventing the survivor from having free access where it is apparent that the survivor wishes to

appropriate the contents of the boxes as against the adverse claims of the administratrix of the decedent who has not been made a party to the suit for the injunction.

An injunction is mandatory when such is its effect no matter what words may be used therein.

Mandatory injunctions are rarely granted *pendente lite* and only under most exceptional circumstances, as where affirmative action by the defendant *pendente lite* is necessary to preserve the *status quo* until a trial and judgment.

The court has no power to grant the mandatory injunction aforesaid as it would destroy the *status quo* and would enable the plaintiff to obtain possession of the property contained in the safe deposit boxes, and hence the relief which she should obtain by final judgment, and especially so where the administratrix, as adverse claimant, is not a party to the action.

SMITH, J., dissented.

APPEAL by the defendant, Lincoln Safe Deposit Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New-York on the 21st day of August, 1916, restraining it *pendente lite* from preventing plaintiff from having free and unobstructed access to certain safes.

*Samuel Hoff*, for the appellant.

*James R. Deering*, for the respondent.

SCOTT, J.:

The defendant is a safe deposit company in the city of New York engaged in the business of renting safes in its vaults to those who may desire to use them. In September, 1904, and in February, 1905, plaintiff and her son, Harold G. Moller, rented two safes in defendant's vaults, and as to each one the said plaintiff and the said Harold G. Moller (but not this defendant) signed an agreement in the following words: " Should this safe be rented by two or more persons, it is understood and agreed that in the event of the death of either, the survivor or survivors are to have the privilege of free access." During the lifetime of Harold G. Moller, who died November 23, 1915, he and the plaintiff both enjoyed free access to said safes, and both, as it is alleged, from time to time deposited therein securities and personal property belong-

ing to the depositor.    After the death of Harold G. Moller, his widow, Emily R. Moller, was appointed ancillary administratrix in this State and notified defendant that she claimed to be entitled to the possession, as such administratrix, of certain securities deposited in said safes by her decedent in his lifetime.    The Comptroller of the State of New York has also notified defendant to seal up said safes pending an adjustment of the claim of the State of New York for the payment of the transfer tax upon the estate of said Harold G. Moller, deceased. It is made quite clear by the moving papers that there is a real controversy between plaintiff and Emily R. Moller, as ancillary administratrix of Harold G. Moller deceased, as to the ownership and right to possession of certain of the securities and personal property now contained in said safes, and that plaintiff's object and purpose in applying for the injunction order now appealed from is to open said safes and take possession of all of the securities, and thus summarily resolve in her own favor the dispute as to the right to their possession.    The defendant makes no claim to the securities and stands indifferent as between the parties claiming them.    It feels called upon to appeal from this injunction order, however, because it apprehends that if it permitted the boxes to be opened by plaintiff, even under the stress of an injunction, it might become liable to the executrix of Harold G. Moller, deceased, who is not a party to this action.

The plaintiff rests her claim upon the agreement between herself and Harold G. Moller, now deceased, which has already been quoted.    It will not be necessary at present to pass upon the merits of this claim further than to suggest that it is extremely doubtful whether that agreement gave the survivor of the two signatories either title to or exclusive right to possession of such securities as might be in the safes when one of the signatories died.    (See *Mercantile Deposit Co.* v. *Huntington,* 89 Hun, 465.)    Nor do we consider it necessary to consider at this time the relation which defendant bears and the duty which it owes to the true owner of the securities in the safes.    Although the cases are not altogether in harmony upon that question, it is clear that to some extent at least a safe deposit company stands in the relation of bailee respecting prop-

erty deposited in its rented safes. (*National Safe Deposit Co.* v. *Stead,* 232 U. S. 58; *Roberts* v. *Stuyvesant Safe Deposit Co.,* 123 N. Y. 57; *Lockwood* v. *Manhattan S. & W. Co.,* 28 App. Div. 68; *People* v. *Mercantile Safe Deposit Co.,* 159 id. 98.)

In *National Safe Deposit Co.* v. *Stead,* Mr. Justice LAMAR, writing for the court, and speaking of a claim somewhat similar to that asserted by the plaintiff here, said: " Both in law and by the express provisions of the contract, the company stood in such relation to the property [*i. e.,* the property deposited in a safe] as to make it liable if, during the lifetime of the owner, it negligently permitted unauthorized persons to remove the contents even though it might be under color of legal process. \* \* \* After his death it would be likewise liable if it permitted unauthorized persons, be they heirs, legal representatives or *joint renters,* to take the property of the decedent." As one of the authorities sustaining this proposition the court cited *Roberts* v. *Stuyvesant Safe Deposit Co.* (*supra*). The case of *People* v. *Mercantile Safe Deposit Co.* (*supra*), recently decided by this court, holds nothing to the contrary. It dealt with an attempt by the State to collect a penalty under the Transfer Tax Law because the company had permitted one of two joint renters to have access to a safe after the death of the other joint renter, and did not deal at all with the right of unrestricted access of one of such joint renters as against the legal representatives of a deceased corenter, and even in that case it was recognized that the relation of a safe deposit company to the property deposited in one of its rented safes was to some extent that of a bailee, although the precise relation it was not necessary to define. The defendant, therefore, is not wholly unjustified in its apprehension as to the liability which might be forced upon it if compelled to comply with the order now under review.

We have described the order appealed from as a mandatory injunction and such it clearly is. It is true that in form it merely " restrains " the defendant from preventing plaintiff's free access to the safes during the pendency of the actions, but this is mere verbal circumlocution for " commanding " defendant to permit plaintiff to have free access, for such she can-

not have without the active co-operation of defendant, and no concealment is made of the fact that what plaintiff really seeks is not access merely, but an opportunity to take possession of and remove the contents of the safes, so that what is actually sought is to compel defendant to actively co-operate with plaintiff in taking into her own possession and control securities which are claimed by another. Such injunctions are rarely granted *pendente lite*, and only under most exceptional circumstances. The limitations upon the power of the court to issue such an injunction are thoroughly discussed and defined by the Court of Appeals in *Bachman* v. *Harrington* (184 N. Y. 458). In that case, after a review of the authorities Chief Judge CULLEN summed up the whole matter as follows: " Where the complainant presents a case showing or tending to show that affirmative action by the defendant, of a temporary character, is necessary to preserve the status of the parties, then a mandatory injunction may be granted. But if there be neither proof nor allegation to that effect and the act sought to be enforced is not continuous in its character, but solely the one sought to be decreed by final judgment, then the issuing of a preliminary mandatory injunction is without authority." In other words, such an injunction may only be issued in those rare cases in which affirmative action by the defendant *pendente lite* is necessary to preserve the *status quo* until a trial and judgment. The order appealed from would not only destroy the *status quo*, but would grant plaintiff all the relief she could obtain by final judgment, and that in the absence from the action, as a party, of the administratrix who also claims to be entitled to possession of the securities.

The order appealed from was wholly unauthorized and is reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLARKE, P. J., McLAUGHLIN and DOWLING, JJ., concurred; SMITH, J., dissented.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.