REGINA VEIHELMANN, Plaintiff, *v.* MANUFACTURERS SAFE DEPOSIT COMPANY, Defendant.

Supreme Court, Trial Term, New York County, July 24, 1950.

*Frederick B. Merkle* for plaintiff.

*Harry Landau* for defendant.

GREENBERG, J.  This is an action by the plaintiff to recover $10,000 which allegedly disappeared from her safe deposit box in the vault of the defendant, Manufacturers Safe Deposit Company.

The plaintiff rented a safe deposit box in a vault operated by the defendant in its branch at Second Avenue and 116th Street in what appears to have been a customary transaction. The rental is evidenced by a written memorandum signed by the plaintiff and defendant. This memorandum sets forth, among other things, the rental charge, subjects the plaintiff to the rules and regulations of the defendant in using and obtaining

access to the " safe ", exempts the defendant from liability for loss by fire and provides that no unauthorized opening of the safe shall be inferable from proof of loss of contents. Plaintiff received two keys. In order to open her safe deposit box, it was necessary to use one of plaintiff's keys and also the master key held by the custodian of the vault. No person other than the plaintiff was authorized to have access to the box.

The plaintiff testified that in July, 1945, she and a business associate counted out $22,000, which she had kept in a safe in her store, and put $1,000 in ten and twenty dollar bills, into each of twenty-two envelopes. In October, 1945 she took these envelopes containing this money and placed them in her safe deposit box in defendant's vault. Thereafter, the plaintiff testified, she went to her box on a number of occasions and on three occasions she took out a total of $4,000 in four envelopes. Subsequently, on March 24, 1947, when she again went to this box, she found that ten envelopes, containing a total of $10,000, were missing. She thereupon returned her box to the custodian without saying anything to him, hurried home and told her business associate of the loss. She then returned, took all the contents of the box home remarking to the custodian that " something happened ". She further testified that she again counted the envelopes and money remaining, in the presence of the same business associate, and found only $8,000 left. They, then, went to the office of the manager of the defendant's vault and reported the loss.

The plaintiff's testimony as to the counting of the original $22,000 in October, 1945, and the subsequent counting of the $8,000 remaining and certain other details were corroborated by the testimony of the plaintiff's business associate.

A safe expert called by the plaintiff as a witness testified that he had examined the lock on the plaintiff's box in July, 1947, and found no evidence of forceful entry.

The plaintiff, a woman sixty-nine years of age, has done business with the defendant company for many years and concededly bears a very good reputation.

At the end of the plaintiff's case, the defendant moved to dismiss the complaint on the ground that the plaintiff had failed to prove the loss of the contents and had also failed to prove negligence of the defendant in the operation of the vault. Decision was reserved on this motion.

The defendant then introduced detailed evidence as to the construction of the vault, the equipment used and the care

exercised in the management and operation of the vault. The general manager testified that the vault has a ten-inch concrete wall, an air space and a one-and-one-half inch steel lining. In addition, the vault has a twelve-ton door. It is closed at night and has a time-clock system controlling the opening in the morning. It is equipped with sensitivity control so that any noise, banging or similar disturbance, would set the alarm off. In addition to the time-clock system, the opening of the vault is safeguarded by two combinations, each known to a separate person, and by the requirement of a signal to the Holmes Electric Protective service when the vault is ready to be opened. Within the vault are over nineteen hundred safe deposit boxes or compartments of various sizes. Each of these boxes or compartments has a double key lock so that it may be opened only by the use of the master key held by the custodian, followed by the key of the holder of the box. Within the compartment is an unlocked tin box in which the holder places his property.

It is conceded by plaintiff's own safe expert as well as established by the testimony of the witnesses for the defendant that the equipment used by the defendant is the standard type of equipment used in such safe deposit vaults and that the locks were well made.

The general manager and the custodian of the vault both testified to the great care taken in controlling the keys to these boxes before they are issued to any customer. When a box is surrendered, according to this testimony, the keys are kept separate and turned over to a locksmith who checks them, interchanges the locks on the safe deposit boxes and then seals each set of keys in an envelope by machine so that it cannot be tampered with. A number of these sealed envelopes are left with the particular branch vault.

When a customer signs a contract leasing a safe deposit box, he is offered five of these sealed envelopes from which to pick one. A strict control is maintained even over the empty envelopes remaining after the keys have been turned over to the lessee.

The defendant maintains at its branch vault one custodian and a relief man who takes over when the custodian is away or helps out when there is a rush of business. When a holder of a box appears and seeks admittance to his box, if he is known to the custodian, he is admitted immediately. If he is not known, he is asked to sign a card and his signature is checked. The holder is then taken into the vault to his box. There, in his

presence, the custodian inserts his master key and turns it to " prepare the lock ". He then inserts the holder's key, turns it and opens the box. The custodian removes from the box the unlocked tin box, hands it to the holder with the latter's key on top. The holder then goes into one of the booths or rooms provided by the defendant to perform whatever operations he wishes with regard to his property in the tin box. When he has finished, he returns the tin box, together with his key to the custodian who, again, in the holder's presence, replaces the tin box inside the safe deposit box or compartment, locks it using the holder's key first and then his own custodial key to complete the locking. The custodian then returns the key to the holder. The testimony as to this procedure and its observance in practice was substantially undisputed.

The defendant also called as a witness a clerk in the personnel department who testified that the defendant makes a thorough investigation of the background of the custodians employed in vaults. He testified that investigations had been made of the custodian going back as far as 1920 and of the relief man, and that all the references and information had been completely satisfactory. The defendant called as witnesses both the custodian and the relief man.

At the close of its case, the defendant renewed its previous motion and moved for a directed verdict. Decision was reserved. The case was then submitted to the jury which was unable to agree upon a verdict and was subsequently discharged by the court.

The question which is thus presented by the defendant's motion to dismiss the complaint is whether, on the basis of all the evidence presented at the trial, the plaintiff has made out a case against the defendant so as to warrant submission to the jury. This, in turn, depends on the nature of the relationship here involved and the rules of evidence applicable.

The nature of the relationship between a safe deposit company and the holder of a safe deposit box is one which has recurrently perplexed the courts. While the relationship has aspects similar to those of standard legal relationships, it does not as a whole coincide with any such standard relationships. Both the Court of Appeals and the Supreme Court of the United States have found it advisable to avoid the question of the overall nature of this relationship and to confine themselves to an analysis of the particular aspects of the relationship presented by the case before them (*Carples* v. *Cumberland Coal & Iron Co.*, 240 N. Y.

187; *National Safe Deposit Co.* v. *Stead*, 232 U. S. 58.) Where these two tribunals have chosen not to tread, for this court to venture would be foolhardy indeed. Yet, a survey of the prior decisions on this relationship is indispensable to the determination of the instant case.

The decisions appear to be somewhat in conflict. However, read chronologically with due regard to the origin of safe deposit vaults and the aspect of the relationship before the court in each case, a certain consistent line of development emerges. The courts have, in effect, in the course of these decisions evolved the concept of a composite relationship having some aspects analogous to bailment and others analogous to a landlord-tenant relationship.

Safe deposit vaults appeared about the middle of the nineteenth century as an outgrowth of the custom then existing among banks of gratuitously giving space in their own vaults for the storage of valuables for which customers wanted special protection. (A Review of the Law of Safe-Deposit Companies, 9 Harv. L. Rev. 131 [1895].) The new function was not at first distinguished from the old custom. The early statutes setting forth the powers and objects of safe deposit companies listed together the power to receive property on deposit as bailee for safekeeping and the power to let safes and vaults without indicating any distinction. (L. 1867, ch. 111; L. 1875, ch. 613.) Indeed the latter power was often buried among the ramifications of the former. This failure to differentiate was further abetted by the fact that the early cases presented the aspect of the relationship dealing with the duty of care on the part of the safe deposit company to prevent unauthorized persons from obtaining property stored in the safe deposit boxes, the aspect in which the duties and obligations are most nearly similar to those of the bailment relationship.

These factors are most clearly seen in the early case of *Roberts* v. *Stuyvesant Safe Deposit Co.* (123 N. Y. 57 [1890]). The plaintiff sued the defendant company for allowing the removal from plaintiff's safe deposit box of property not included in the warrant under which access to the box had been allowed. The court there analyzed the written contract between the parties and, as one of the bases for its decisions, held that the defendant's officers had neglected to exercise the degree of care they were bound to exercise by the terms of the contract with the plaintiff. However, the court also based its decision on the assumption that the relationship was one of bailment,

referring to the act incorporating the defendant company as authorizing the defendant " to receive on deposit, as bailee, for safe-keeping and storage, jewelry, plate, money, securities and other valuable things upon such terms and for such compensation as might be agreed upon by the said corporation and the owners of the properties or the bailors ". The court completely overlooked the phrase also empowering the company " to let out vaults and safes and other receptacles ". The decision here reached, whatever the rationale, was obviously a sound one.

*Lockwood* v. *Manhattan Stor. & Warehouse Co.* (28 App. Div. 68 [1898]) was decided on the authority of the *Roberts* decision (*supra*) as a square holding that this relationship was one of bailment.

Since these decisions, there has been a growing recognition of the fundamental differences between the function of a bank or safe deposit company as depository of valuable property as a bailee for safe-keeping and their function in letting safe deposit boxes and other receptacles. This is reflected in the present form of section 317 of the Banking Law which now states these two functions in two separate numbered subparagraphs. It is also reflected in the later decisions. The later cases have raised other aspects of the relationship to which the bailment analogy is not applicable, namely, the rights and obligations to third parties. In *People* v. *Mercantile Safe Deposit Co.* (159 App. Div. 98 [1st Dept., 1913]) the State sued the safe deposit company to recover a penalty under section 227 of the Tax Law which provided " no safe deposit company * * * having in possession or under control securities, deposits, or other assets belonging to or standing in the name of a decedent " should deliver these without retaining a sufficient portion or amount to pay any tax which might be assessed. The defendant company had failed to exercise any control over a safe deposit box held in the name of a deceased customer and another person which contained securities of the decedent. The court held that the defendant company did not have " possession or control " of the securities in its customer's safe deposit box within the meaning of this section of the Tax Law. It pointed out that the company could not have obeyed the statute without invading the legal rights of its customers. The court stated in its decision (p. 101) : " The relation between the defendant and its customers * * * may have some elements comparable to those in a case of bailment, but the legal status of the parties seems to me to bear a closer analogy to that arising

from the relation which exists between tenants of a general office building and the landlord thereof, who keeps within his control and under his care and protection the common means of access to the building and to the suites of offices therein, but as to which, subject to any regulations that may have been established by the landlord, the rights of the tenant are exclusive.''

In *Carples* v. *Cumberland Coal & Iron Co.* (240 N. Y. 187, *supra*) which presented the question of whether property in a safe deposit box was subject to a warrant of attachment, the Court of Appeals in 1925 analyzed this relationship as follows (p. 192): '' It is true that there has been much discussion of the relationship between safe deposit companies and their box customers and of the question whether property thus placed is in the possession and control of the safe deposit company or of the customer (*National Safe Deposit Co.* v. *Stead*, 232 U. S. 58, 67) and very possibly different answers may be made to this question on a consideration of the circumstances under which it arises and of the purposes for which it is being asked. We do not deem it necessary to determine it with exactness in this case. There is no doubt that the Safe Deposit Company has a general and surrounding control and possession of the box. It owns the building and the vault in which the box is located and makes rules for the customer's access to the box which generally require the assistance of the company in opening it. This possession and control, however, is exercised for the purpose of securing a greater safety for the customer rather than of asserting possession as against him of the contents of the box to which, under proper rules and regulations, he has unquestioned and unqualified access. While the status of the Safe Deposit Company is, therefore, in some aspects that of a bailee, the customer's control and possession of his box is not much different than would be the control and possession by a tenant of property in an office which he had rented from the owner of the building.''

In *Cohen* v. *Manufacturers Safe Deposit Co.* (297 N. Y. 266), which involved the rights of a person finding money in a booth maintained by the safe deposit company, as against the rights of the company, the court, while dismissing the submission without prejudice for failure to pose any determinative issue of law, stated that the safe deposit company is '' in some degree a bailee of property deposited in its rented boxes.'' (P. 269.)

Thus, have the courts evolved a concept of a composite

relationship with aspects analogous to bailment and other aspects analogous to landlord-tenant relationships. This evolution has resulted from the realistic approach of the courts in analyzing each aspect of the relationship as it arises before them and determining the rights and obligations of the parties in the light of any written agreement and of the nature of the business and the primary purpose for which safe deposit boxes are rented.

The instant case presents an apparently typical safe deposit box rental. Plaintiff was hiring a box in which she could keep property for which she desired a very high degree of protection. The defendant was responsible for providing this protection. While it was to exercise a very high degree of care, the provisions of the written memorandum as well as the general usages of this business indicate defendant was not to be an insurer. It was clearly of the essence of the contract that the plaintiff alone was to have knowledge and control of the contents of the box as well as access thereto. On the other hand, the safe deposit company was to retain what the Court of Appeals, in the *Carples case* (*supra*, p. 192) referred to as " a general and surrounding control and possession of the box." It owned the vault surrounding the box, had complete charge of the equipment, made the rules and regulations controlling the access of persons to the boxes and the other aspects of the operation of the vault and hired and supervised the personnel who carried out all the detailed operations of maintaining this vault.

In a sense the relationship set up here envisaged two spheres of control, each one exclusive and yet both complementary. The safe deposit box holder had exclusive control and knowledge of the property which he placed within his safe deposit box. The safe deposit company had the exclusive control and knowledge of the management and operation of the surrounding vault in which the box is located. Thus, the overall relationship is not a true bailment because the holder of the box did not turn over control and possession of the contents of the box, but, on the contrary, retained the exclusive right to deal with the contents himself. (Dobie on Bailments and Carriers, p. 166 *et seq.*; 2 Street on Foundations of Legal Liability, p. 291, *et seq.*; 11 Minn. L. Rev., 440.)

However, within the limits of its exclusive area of control, namely the area surrounding the box and the exterior of the box itself, the position of the safe deposit company *vis-a-vis* the holder of the box, is analogous in certain basic respects to that

of a bailee. It has complete and exclusive control of this area and sole knowledge of the happenings therein, while the holder has none. In addition, the defendant has the duty of exercising a very high degree of care in safeguarding this area and preventing unauthorized access to the safe deposit box.

What then are the duties and obligations of the safe deposit company to the holder of the box and how are the burdens of proof and of presenting evidence to be apportioned among them? As stated above, the safe deposit company is not an insurer. It is liable only for its want of due care. Viewed in this light, there are two theories which may be applicable to this action: First, that this is an action sounding in negligence, or second, that this is an action based on a bailment or a relationship analogous to bailment.

Upon the first theory, the plaintiff would have the burden of proof of showing negligence in the first instance in order to make out a case to go to the jury. Upon the second theory, the rules relating to bailments would apply. Under these rules, while the burden of proof would be on the plaintiff bailor to prove want of due care by the bailee, the plaintiff could make a prima facie case in the first instance by merely proving the deposit of the property and the failure of the bailee to return it in good condition. (*Collins* v. *Bennett,* 46 N. Y. 490; *Claflin* v. *Meyer,* 75 N. Y. 260.) The bailee, in view of this exclusive knowledge and custody of the property then has the burden of coming forward with evidence to explain the loss or to show it occurred without fault on his part. (*Honig* v. *Riley,* 244 N. Y. 105; *Gardner* v. *Roosevelt Hotel,* 263 App. Div. 268.)

In this court's opinion, the second theory is applicable in this case. Although this is not a true bailment, within the limits of the defendant's area of exclusive control, the elements which gave rise to these special rules of evidence are present here, namely, an area of exclusive control as to which the defendant has sole knowledge and the plaintiff has none, and a duty of care on the defendant to safeguard this area and its contents. In view of these elements, after the plaintiff has produced evidence showing the loss of the contents of the box, access to which is controlled by this area, it would seem to be fair and to impose no undue hardship on the safe deposit company to require that it show that there was no want of due care on its part within its area of exclusive control. This holding is in accord with the prior decisions dealing with this aspect of the relationship, namely, the *Roberts* and *Lockwood* decisions

(*supra*) as limited by later decisions. Furthermore, this holding is also required by the rule that upon this motion to dismiss the most favorable view be taken of the plaintiff's case. The courts of other states have reached similar decisions. (*Schmidt* v. *Twin City State Bank,* 151 Kan. 667; *Bohmont* v. *Moore,* 138 Neb. 784, 138 Neb. 907; *Koczora* v. *Standard Safe Deposit Co.,* 221 Ill. App. 43.)

Applying these rules to the present case, the plaintiff has the burden of proof of showing some neglect or breach of duty or care on the part of the defendant safe deposit company as alleged in the complaint. The plaintiff, by her testimony that she placed the money in her safe deposit box and that when she later went to her box she found it had disappeared, has established a prima facie case and raised the presumption that the defendant company failed in its duty of exercising a high degree of care. The safe deposit company thereupon had the burden of going forward to show that any loss was not due to a want of due care on its part. This burden the safe deposit company attempted to meet by presenting detailed evidence, which is substantially undisputed, as to the construction of the vault, the safeguards employed in its operation, the quality of the boxes, keys and other equipment, the control over surrendered boxes, the system employed in opening each box whereby the holder's key never left his sight and the box was always opened and locked in his presence and the careful investigation of the background of the personnel employed in the vault. The evidence adduced also established that the system, procedures, operation and equipment in this vault were similar to and in some respects identical with those used by other safe deposit companies. By this detailed evidence of the high degree of care exercised, the defendant has, as a matter of law, sustained its burden of going forward with the proof and has met and even overcome the prima facie case raised by plaintiff's proof.

While in the case of a true bailment, where the property itself is delivered into the complete and exclusive control of the bailor, the only satisfactory proof of due care may be an explanation of exactly what happened to the property, e.g., theft or destruction by fire, in this case the defendant has given a full accounting of its due care within its exclusive area of control in the only way open to it. As has been discussed above, the exclusive control of the defendant extends only to the sphere including the exterior of the box and the surrounding vault. Under its contract with the holder it is to have no knowledge

or control of the contents of the box. Under these circumstances to require the defendant safe deposit company to account for the contents of which it has no knowledge or control and over which the holder of the box, by agreement, exercises exclusive control, would be to make the defendant more than an insurer, a relationship not contemplated or intended by the parties, and place insupportable burden on defendant. (*Schmidt* v. *Twin City State Bank, supra.*) The detailed and undisputed proof of each of the steps taken by the defendant in guarding the box and barring unauthorized access thereto is sufficient as a matter of law to meet the presumption of the breach of duty raised by plaintiff's proof. The plaintiff having the burden of proof of showing the breach of duty or want of care on the part of the defendant safe deposit company and having failed to present any evidence on which a finding of want of due care can be based, the defendant is entitled to a dismissal of the complaint.

It is clear that if the theory that this is an action sounding solely in negligence is applied here, the same result would inevitably follow. Accordingly, the motion to dismiss the complaint is granted.