(June 9, 1953.)

REGINA VEIHELMANN, Respondent, v. MANUFACTURERS SAFE DEPOSIT COMPANY, Appellant.

*Per Curiam.* The holding in this case by the Court of Appeals on the previous appeal from judgment for defendant (303 N. Y. 526), which reversed this court and the Trial Term, is controlling upon us, as law of the case and as a matter of *stare decisis.* The record on the second trial does not provide a sufficient basis for distinction. The allegation and the proffered proof as to the stealing of the $10,000 from the safe-deposit box does not, in placing responsibility on defendant's employees, exclusively relate to theft by such employees. Such allegation and proof is consistent with carelessness of defendant's employees, albeit carefully selected, and of defendant, in permitting access to the box of a stranger who somehow acquired the original or a duplicate key to the box. Absent theft by defendant's employees, the case could put in issue the carefulness of defendant and its employees with reference to the system of access to safe-deposit boxes and the manner in which that system was implemented· by the employees under the general supervision of defendant. It should be noted that the Court of Appeals on the first appeal pointedly referred (p. 530) to the fact that no access records were kept by the defendant company and that ordinarily only one employee was in charge of the vault and of the more than nineteen hundred safe-deposit boxes that were enclosed therein.

Accordingly, the judgment for plaintiff should be affirmed.

DORE, J. P. (dissenting). In an action by plaintiff, holder of a safe-deposit box in defendant's bank, defendant appeals from judgment entered on a jury's verdict of $10,000 in plaintiff's favor after a second trial before the court and jury. At the first trial the jury disagreed and was discharged and the complaint dismissed by Trial Term on the merits (198 Misc. 861); this court on appeal unanimously affirmed (278 App. Div. 685); the Court of Appeals granted leave to appeal and in a four to three decision reversed this court and granted a new trial (303 N. Y. 526). The majority opinion of the Court of Appeals did not expressly hold that the relation of the parties was that of bailor and bailee but held that the question of negligence was for the jury and sent the case back for a new trial.

The precise legal relation a safe-deposit company bears to the box owner has not been specifically defined and the cases are not altogether in harmony on that issue. Thus it has been held that " to some extent at least " (*Moller* v. *Lincoln Safe Deposit Co.*, 174 App. Div. 458, 460, 461) or " in some degree " (*Cohen* v. *Manufacturers Safe Deposit Co.*, 297 N. Y. 266, 269) the safe-deposit company stands in the relation of a bailee respecting property deposited in its rented safe-deposit boxes. Such rulings practically are not very helpful when they do not define the precise " extent " or " degree " involved. Subdivision 1 of section 317 of the Banking Law refers to a safe-deposit company as " depositary for hire *or* as bailee for safekeeping and storage ". (Italics mine.) (See, also, *National Safe Deposit Co.* v. *Illinois*, 232 U. S. 58; *Roberts* v. *Stuyvesant Safe Deposit Co.*, 123 N. Y. 57; *Lockwood* v. *Manhattan Storage & Warehouse Co.*, 28 App. Div. 68; and *People* v. *Mercantile Safe Deposit Co.*, 159 App. Div. 98.) Obviously a safe-deposit company engaged in the renting of safe-deposit boxes over which it has no control but which are subject to entire control by the lessee of the box, is not in such possession and control of the contents as is found in the normal bailor-bailee relationship. Ordinarily the bailee knows what has been bailed or left in his deposit for hire. The safe-deposit box holder, however, exercises exclusive control and has exclusive knowledge of what is in the box. A depositor in the exclusive secrecy

of a booth in the bank's vault may remove wholly or in part the contents of the box and then sue to hold the bank liable by reason of the bank's obvious inability to explain the disappearance thus caused by the depositor himself. The danger to banks and safe-deposit companies of liability such as the one here involved is so onerous and the possibility of fraud so obvious as to require most careful scrutiny of the circumstances under which the claim is made before such liability is finally imposed.

The rule established by the weight of authority is that the bank is not an insurer of the safety of the contents of safe-deposit boxes but is required to exercise only ordinary care (3 Paton's Digest of Legal Opinions, Safe Deposit and Safekeeping, § 6, pp. 3322–3333, and cases cited [subd. B — Inside Theft; subd. C. — Missing Contents]; cf. also Paton's Digest of Legal Opinions [Supp., Aug., 1952], Safe Deposit and Safekeeping, § 6, pp. 1–2; 133 A. L. R. 279 [Liability for loss of contents of safe-deposit box]; *Hauck* v. *First Nat. Bank of Highland Park,* 323 Ill. App. 300).

However, even if defendant had the full obligation of a bailee, in the absence of any express stipulation, the measure of the bailee's obligation is the exercise of ordinary care and he cannot be held to be an insurer of the property against theft.

Plaintiff's complaint proceeded on the theory that the $10,000 had been "through the negligence of the defendant * * * *stolen* from said safe deposit box". (Italics mine.) That was the sole theory of the complaint and it was on that theory that the Court of Appeals reversed after the first trial; that also was a substantial part of plaintiff's proof. Throughout part of the trial plaintiff's evidence was aimed at creating the impression that dishonest employees of defendant might have been responsible for the loss. But later a stipulation was made by counsel that defendant used reasonable care in the selection of its employees. It was also established without contradiction that there was no evidence of forcible entry. The theory on which the case was tried is not that of an unexplained refusal to return bailed property. Plaintiff's expressly formulated theory was claimed theft and the court instructed the jury it could logically infer theft. In a bailment, an unexplained refusal to return the bailed property raises an inference of negligence, but where it appears that the reason for the failure to return is a theft, the presumption does not obtain and the burden of proving negligence is upon the plaintiff (*Claflin* v. *Meyer,* 75 N. Y. 260, 263–264). That case involved a claim against a warehouseman and the court held that the plaintiff in all cases suing for the loss of goods must allege and prove negligence and " This burden is never shifted from him"; the court added (p. 264): " if, either in the course of his [plaintiff's] proof or that of the defendant, it appears that the goods have been lost by theft, the evidence must show that the loss arose from the negligence of the warehouseman." To require a safe-deposit company as if it were in all respects a bailee to explain how the loss occurred when it is unaware of the very existence of the article and is not in sole control of the box, would seem to impose an unfair burden and greatly to increase the likelihood of successful fraud. To prevent such fraud, the plaintiff ordinarily should have the ultimate burden of proof and an inference of negligence may be rebutted by a showing of reasonable care and when that is rebutted the plaintiff should be required to show specific negligence (see 64 Harv. L. Rev. 998–999).

The court expressly refused to charge at defendant's request that defendant was not an insurer and not responsible for all hazards and not liable merely

because money or other contents is missing from the safe-deposit box. Defendant plainly was not an insurer and had the right to have the jury expressly so told. The refusal was in my opinion error.

In the light of the conceded fact that there was no forcible entry, it was inherent in plaintiff's charge of theft to involve the connivance or assistance of the vault custodians with the use of the guard key without which the vault could not be opened or the box abstracted. All that any bank could do to guard against such activity is to use care in the selection and supervision of its personnel. The mere fact that the money was missing or even that a theft had occurred would not in and of itself give rise to liability on defendant's part. Theft by a servant is not within the scope of his employment and even a bailee is not liable for theft or misappropriation by his servants in the absence of negligence on the part of the employer in the selection, supervision or retention of his servants (133 A. L. R. 289). In this case it was expressly stipulated during the trial that this defendant did use reasonable care in the selection of its employees. Accordingly, the court also erred in this connection in refusing to charge as requested by the defendant that defendant used due care in such selection. That instruction was vital in view of plaintiff's theory of theft and the suggestion frequently made that it was accomplished by defendant's employees.

These requests called to the attention, of the court matters of such importance that the court should have given *some* instruction to the jury thereon; accordingly, failure to do so would be error even though some part of the requested charge may not be appropriate (*Griffiths* v. *Delaware & Hudson Co.,* 238 App. Div. 246). An erroneous instruction on a fundamental matter may cause a reversal in the interests of substantial justice even though there is failure to except (*Zeffiro* v. *Porfido,* 265 App. Div. 185).

It is difficult to see how the jury finally reached its conclusion speculating as to which suggested theory was the cause of the claimed loss. The idea of a thief removing only $10,000 in cash from a safe-deposit box to which he had access in complete privacy and seclusion and leaving therein other envelopes containing $8,000 more also *in cash* would seem to be so remote a possibility as to be as a matter of practical common sense wholly improbable. Plaintiff's theory of the theft is that a thief in the secrecy of the closed room of a safe-deposit vault with access to a box containing $18,000 in cash took only $10,000 and left $8,000 in cash untouched. In the circumstances, no rational basis is suggested for the conclusion arrived at.

Before the claimed cash was placed in the safe-deposit box, plaintiff kept the money in a safe in her store claiming that she didn't like the return one got in savings banks. She had kept all the money in a bag in a safe in the store and says after she and her friend, Vogele, had counted the money, the envelopes were put back in the bag and placed in the store safe. From a counting at that time until March, 1947, a period of almost two years, the money was never counted again by anyone including plaintiff. The envelopes were left in the safe in the store until one evening in October, 1945, she went to the store safe and counted only the envelopes, put them in a shopping bag and took them to her apartment where the cash stayed overnight. The next day she took the shopping bag to the safe-deposit box. One possibility is that the money disappeared while it was in her store or in her apartment and that she actually thought she deposited in the bank safe deposit the entire

amount claimed but in fact did not do so. This possibility was not suggested to the jury but only a theory of the loss of the key.

Accordingly, I dissent and vote to reverse the judgment appealed from and to grant a new trial, with costs to abide the event.

Callahan, Breitel and Bergan, JJ., concur in *Per Curiam* opinion; Dore, J. P., dissents and votes to reverse and grant a new trial, in opinion.

Judgment affirmed, with costs.