LYDIA J. ROBERTS, Appellant, v. THE STUYVESANT SAFE DEPOSIT COMPANY of the city of New York, Respondent.

When property, in the custody of a bailee for hire, is demanded by third persons under color of process, it becomes his duty to ascertain whether the process is such as requires him to surrender it; if it is not, it is his right and duty to refuse to surrender it; also to offer such resistance to the taking and to adopt such measures for reclaiming it, if taken, as a prudent and intelligent man would, if it had been demanded, and taken under a claim of right, without legal process.

While a bailee may excuse himself for permitting the property of the bailor to be taken by a stranger, by showing that he yielded to the power of legal process, a seizure under such a process, after the bailee has negligently allowed the property to pass into the hands of trespassers, is not a protection to him in an action by the owner.

The mere levy, therefore, of an execution or attachment upon property by a creditor of the owner while in the possession of the tort feasor is not available, as a defense or in mitigation, in an action against the bailee.

It seems, if it can be shown that the bailee has had the benefit of the property, by application through regular legal proceedings upon a judgment against him, this will go in mitigation of damages.

Defendant, a safe deposit company, having authority by its charter (Chap. 111, Laws of 1867) to receive property on deposit for safe keeping as bailee for hire, rented one of its safes to plaintiff. By its rules printed on the back of the receipt given to plaintiff, its responsibility was limited to the diligent and faithful performance of their duty by its officers and employes, and it was provided that no one would be allowed inside its vaults for the purpose of opening any safe therein, except the renter or his substitute, and that two persons would not be allowed to enter the vault at the same time, unless personally known to one of defendant's officers. Plaintiff placed in her safe a sum of money, certain U. S. bonds and other securities. A police captain having a search warrant, which recited that complaint had been made of the theft of certain U. S. bonds, and that said property was concealed in certain boxes or safes in defendant's vaults, one of which was plaintiff's, and accompanied by three other persons prepared to break into the safe, appeared at defendant's place of business, and demanded access to plaintiff's safe, which was refused. Defendant's officers did not ask to see the warrant, or attempt to ascertain what portion of the contents of the box it called for; they made no other resistance, but pointed out plaintiff's safe; the officer broke it open, and removed the property therein. There was nothing in the safe corresponding to the property described in the search warrant, except the U. S.

bonds, and as to those the warrant contained nothing that would identify them by number, date, issue or otherwise, as the stolen property. The officer took away all the property, and delivered it to the district attorney, instead of to the recorder to whom the warrant was returnable. It did not appear that any investigation was ever made to ascertain whether any of the property thus carried away was stolen. Defendant did not attempt to notify plaintiff, although they had her address, and she resided not more than three-fourths of a mile distant, nor did it attempt to procure a return of the property. In an action to recover the value of the property, *held*, that defendant failed to exercise the care required by the contract and the relations they had assumed toward plaintiff; that while defendant's officers were not bound to resist the execution of the warrant with force, it afforded no excuse or justification for the removal of any property from defendant's custody that was not described therein, and hence the police had no right to remove any of plaintiff's property found in the safe, at least except the U. S. bonds, and all assisting in carrying it away were trespassers; that as to the other property it would have been proper for defendant's officers to have used such means to prevent its removal as would be proper and justifiable in case the same parties attempted to remove it without having any warrant or legal authority; that they neglected to make such opposition or such efforts to reclaim the property as they could or should have made.

While the property was in possession of the district attorney it was levied upon under attachments procured by parties claiming to be creditors of plaintiff. The findings of fact herein stated the commencement of the action by the creditors, the issuance of attachments and levy thereunder, the entry of judgments and levy of execution, but there was no finding that the proceeds of the property were applied upon any judgment against plaintiff, and it appeared that some of the judgments were reversed and the actions in which other judgments were rendered were discontinued. *Held*, the facts found established no defense and furnished no ground for mitigation of damages. Also, that upon the reversal and discontinuance of the actions the attachments and executions fell with them, and if any of plaintiff's property was applied thereon the judgment-creditors could not have justified or defended under their judgments, but would have been compelled to make restitution, and the defendant here stood in no better position.

It appeared that one of the judgments against plaintiff was in force at the time of the trial; this was for less than $10,000. The value of the property taken was about $43,000. Although not so found, there was some evidence warranting the conclusion that some of the property was applied in satisfaction of this judgment. There was, however, evidence tending to show, and plaintiff's counsel requested the trial court to find, that said judgment was entered upon an offer of judgment made by an attorney for plaintiff without authority and in fraud of her rights; that the execution thereon was issued after the attachment was dissolved;

that it directed sale of the property in the same form as if the attachment was in force; that the execution was issued to a person who had no authority to execute it, and that the sale itself was fraudulent and unfair. These requests were refused as immaterial. *Held*, error.

*Roberts* v. *S. S. D. Co.* (49 Hun, 417), reversed.

(Argued June 9, 1890; decided October 7, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 8, 1888, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial without a jury.

This action was to recover for the alleged negligence of defendant as bailee for hire.

The facts, so far as material, are stated in the opinion.

*Ira Shafer* for appellant. The defendant was a bailee for hire. (Laws of 1867, chap. 3, § 2 ; Edw. on Bail. 44; 277, 278.) The statute requires that the place and property shall be particularly described in the search warrant. (3 R. S. [6th ed.] 1045, § 47 ; Barb. Cr. Law, 499, 500, 501.) The defendant was bound to endeavor to prevent the trespasser from taking away the plaintiff's goods. (*Jones* v. *Morgan*, 90 N. Y. 4 ; Edw. on Bail. 276, 277, 278, 284, 285, 301, 371, 374, 375.) The attachment was not levied upon the property in Phelps' hands nor in defendant's hands. (Code Civ. Pro. §§ 644, 649.) If the attachment, execution and judgment are all regular, not a thing was sold under it, or applied to the National Trust Company. (*Hall* v. *Andrews*, 65 N. Y. 572; *People ex rel.* v. *Bowe*, 81 id. 43 ; 2 Greenl. on Ev. §§ 276–283 ; *Pierce* v. *Benjamin*, 14 Pick. 356–361 ; *Hanner* v. *Wissey*, 17 Wend. 91 ; *Otis* v. *Jones*, 21 id. 394 ; *Higgins* v. *Whitney*, 24 id. 379 ; *Kaley* v. *Shed*, 10 Metc. 317–319 ; *Sprague* v. *McKinsey*, 63 Barb. 60.) Defendant should have brought replevin. (Edw. on Bail. 278; 2 Black. Comm. 453 ; *Duncan* v. *Spier*, 11 Wend. 54.) The attachments are no defense; as before shown they were not levied upon the property in Phelps' hands, but if they were levied properly, this might mitigate the damages, but cannot constitute a

defense; upon this record the plaintiff is entitled to damages; the amount only, is the question. (Code Civ. Pro. § 3343.) The pretended sale of the plaintiff's property under the attachment and execution in the *Obrig* case was a fraud. (Code Civ. Pro. §§ 184, 706, 709, 712, 1406, 1407.) The court below erred in granting a new trial for a false reason, as both Judge VAN VORST and the General Term have held. *(Ritchie* v. *Putnam,* 13 Wend. 524, 526; *Dresser* v. *Brooks,* 3 Barb. 429; *Jarvis* v. *Sewall,* 40 id. 449, 458; *Robert* v. *Donnell,* 2 Daly, 64; *Robert* v. *Good,* 36 N. Y. 408, 410, 411; *Bank of Charleston* v. *Emerie,* 2 Sand. [S. C.] 718; *Rockwell* v. *Merwin,* 45 N. Y. 166, 168; *Catlin* v. *Grissler,* 57 id. 364, 373.)

*Charles E. Miller* for respondent. The evidence clearly establishes that defendant was not guilty of negligence or violation of its duty under the contract in allowing Captain Petty under the search warrant to break open the safe and carry away its contents. (Crocker on Sheriffs, § 80; *Bell* v. *Clapp,* 10 Johns. 263.) Should it be held by the court that defendant was guilty of negligence or violation of duty and that the Courts of Circuit and General Term were in error it is clear that no damage resulted to plaintiff thereby. (Story on Bail. §§ 120–266; 2 Greenl. on Ev. § 645; Code Pro. §§ 237, 239, 240; *Day* v. *Bach,* 87 N. Y. 56, 62; 1 Add. on Torts, 28, 29; *Lowery* v. *W. U. T. Co.,* 60 N. Y. 198; *Thompson* v. *Button,* 14 Johns. 84; *Kaley* v. *Shed,* 10 Metc. 317; *G. Bank* v. *Leavitt,* 17 Pick. 1; *Comrs.* v. *Raphael,* 2 Scott, 482; *Squire* v. *Hollenbeck,* 9 Pick. 551; *Pierce* v. *Benjamin,* 14 id. 356; *Montgomery* v. *Wilson,* 48 Vt. 616.) Should it be held by the court that the levy under the attachments is not a complete defense, the following facts appear, viz.: That in the Obrig suit a judgment was obtained in June, 1876; execution was issued in that action, and the property, excepting the money, was sold under such execution and the proceeds applied to the use of this plaintiff by satisfying her debt. Such application would be a complete defense even in an

action for conversion, and *a fortiori* in an action for negligence merely. (*S. S. Co.* v. *Gibbons*, 9 Wend. 327, 331; *Ball* v. *Liney*, 48 N. Y. 6, *Higgins* v. *Whitney*, 24 Wend. 379; *Sherry* v. *Schuyler*, 2 Hill, 204; *Curtis* v. *Ward*, 20 Conn. 204; *Stiles* v. *Davis*, 1 Black, 101; *Dwight* v. *St. John*, 25 N. Y. 203; *People* v. *Hopson*, 1 Den. 574.) If it be held by this court that defendant was guilty of negligence inasmuch as but nominal damages could have been awarded under the evidence, the first judgment should be affirmed. (Code Civ. Pro. §§ 3228, 3229; *Hartwell* v. *Root*, 19 Johns. 345; *Anthony* v. *Wood*, 29 Hun, 239.) The exceptions to the findings and refusals to find of the court at Circuit are insufficient to raise any specific question, and are practically of no avail. (*Newell* v *Doty*, 33 N. Y. 83; *Wheeler* v. *Billings*, 34 id. 263; *Walsh* v. *Kelly*, 40 id. 556; *Requa* v. *City of Rochester*, 45 id. 129; *Ward* v. *Craig*, 87 id. 550; *Smedis* v. *City of Brooklyn*, 88 id. 13; *Tousey* v. *Roberts*, 114 id. 312; *Newall* v. *Bartlett*, Id. 399.)

O'BRIEN, J.    The legal relations which the defendant held to the plaintiff, and out of which this controversy has arisen, was that of a bailee or depositary for hire. The fundamental question in the case is whether the defendant, upon the undisputed evidence in the record, discharged those duties and obligations to the plaintiff which the law imposed upon it in regard to the care and custody of her property. The defendant is a corporation organized under and possessing all the powers conferred by chapter 111 of the Laws of 1867. It was authorized to receive on deposit, as bailee, for safe keeping and storage, jewelry, plate, money, securities and other valuable things upon such terms and for such compensation as might be agreed upon by the said corporation and the owners of the property or the bailors. On the 26th day of July, 1873, the defendant delivered to the plaintiff an instrument in the form of a receipt, whereby the defendant acknowledged that it had received from the plaintiff, residing at 206 West Twenty-first street, in the city of New York, the sum of

twenty dollars for the rental of safe No. 6,012 in the vaults of the Stuyvesant Safe Deposit Company for the term of one year from that date, " and subject to the rules of the company, printed on the back of this receipt." One of these rules provides that " the responsibility of this company with regard to property deposited in the rented safes is limited to the diligent and faithful performance of their duty by the officers and employes of the company." Another provided that no person would be allowed inside the vaults for the purpose of opening any safe therein except the renter, or his substitute, named in the books of the company, and that two persons would not be allowed to enter the vault at the same time unless personally known to one of the defendant's officers. The plaintiff was furnished with a key to the safe thus rented as provided for by the rules, and she placed a tin box in it for the purpose of holding such property as she desired to place therein. On the 15th of October, 1873, the plaintiff had in this box, which was locked up in the safe rented from defendant, a large sum of money, some fourteen United States bonds, and also numerous other bonds issued by various railroad and telegraph companies, the whole amounting to over $40,000 in value. On that day the recorder of the city of New York issued a search warrant under his hand and seal, reciting that complaint had been made to him on oath by one Pinkerton, that about December 10, 1872, 100 United States bonds of the par value of $75,000, and four Louisville water bonds of $1,000 each had been feloniously stolen and carried away from the Third National Bank of Baltimore by certain persons named in the warrant, as was suspected, and that said property was then concealed in three certain boxes or safes in defendant's vaults, one of which was the box or safe rented by the plaintiff. The warrant, which was directed to the sheriff of the city and county of New York, or to any policeman of the municipal police of said city, then commanded the officers to whom it was addressed to diligently search in the day-time the said boxes or safes in the said premises where the said property was suspected to be concealed, and when found to bring the

same before him to be dealt with according to law. Armed with this warrant, a police captain, accompanied by another police officer and by Pinkerton and a person prepared to break into the safe, appeared at the defendant's place of business and demanded access to the safe used by the plaintiff. It is found that the defendant's officers protested against the proposed action of these parties, but they made no other resistance, and they furnished the officers with the means of identifying the safe in which the plaintiff's property was, or pointed out the safe to him, and the officer then broke it open and removed the tin box from the same. After the formal protest on the part of the defendant's officers, no attempt was made by them to interfere with the officers who expressed a determination to enter the safe by force. A list of the contents of the box was made by one of defendant's officers and the police. There was found in it over $9,000 in money, besides the railroad and telegraph company bonds, but nothing corresponding to the property described in the search warrant, except fourteen United States bonds, and, as to these, the warrant contained nothing that would enable anyone to identify them by number, date, issue or otherwise, as the stolen property, or any part of it, which was described in the warrant. The officer carried all the contents of the box away, and instead of bringing it to the recorder who had issued the warrant, and before whom it was returnable, and who had power to inquire in regard to the ownership of the property, the officers delivered the box and its contents to the district attorney. It does not appear that any investigation was ever made to ascertain whether any of the property thus carried away was in fact stolen. There is no proof or finding in the case that it was; and the defense of this action proceeded upon the theory that it in fact belonged to the plaintiff. The defendant's officers were not taken by surprise when the police captain and his associates appeared and, upon the authority of a search warrant, demanded admission to the vault. It appears that a day or two before one of the assistants of the district attorney

called at the defendant's place of business and inquired of
the bookkeeper if the plaintiff's husband and another man
had safes in the vault. The bookkeeper refused to answer
the question and, upon such refusal, he was informed by the
assistant in substance that he would show him that he "must
tell." The next day the bookkeeper was served with a sub-
pœna by the district attorney to testify before the grand jury,
and to have with him all books and papers of the defendant
containing the names of depositors in the safes or vaults of
the company. The bookkeeper then consulted with the presi-
dent and they concluded that it would not do to bring the
books into court, but that they would take a memorandum
from them of the names of the parties, and in this way the
district attorney became informed that the plaintiff also had
a safe in the vault of defendant. The defendant's officers
were not bound to resist the execution of the warrant by the
employment of force, but the warrant afforded no excuse or
justification for the removal of property from the defendant's
custody that was not described therein, and hence in this case
the police had no right to remove any of the plaintiff's prop-
erty found in the safe except possibly the United States bonds.
As to all the other property, the defendant could have used
such means to prevent its removal as would be proper and
justifiable in case the same parties attempted to remove it
without having any warrant or legal authority whatever. In
carrying away property not called for by, or described in, the
warrant, the police and other persons assisting them were tres-
passers, and we think that the defendant's officers neglected
to make such opposition to the trespass as they could and
should have made under all the circumstances. The police
could not have proceeded to execute the warrant without first
exhibiting it or at least stating its contents, and it must be
assumed that they would have done so if requested. There
is no proof and no finding that after the safe was broken open
and the tin box found to contain property not mentioned in
the warrant that the defendant's officers called the attention
of the police to the fact or forbid its removal. Indeed none

of the defendant's officers asked to see the warrant or informed themselves in regard to its contents or took any means to ascertain whether the contents of the box or any part of it was called for by the process under which the police assumed to take possession of the property and remove the same from the defendant's custody. They made no attempt to notify the plaintiff of what had transpired, although they had her name and address, and she resided not more than three-fourths of a mile distant. They made no attempt to procure a return of the property, which seems to have been delivered to the district attorney, instead of bringing it before the recorder, according to the command of the warrant to be "dealt with according to law." We think that the defendant's officers neglected to exercise, in the care and keeping of the property which the plaintiff had confided to their charge, that degree of diligence and fidelity to which they were bound by the terms of the contract under which the property was deposited in the defendant's vault as well as by the legal relations which they then assumed to the plaintiff. (*Ouderkirk* v. *C. N. Bank*, 119 N. Y. 263 ; *Jones* v. *Morgan*, 90 id. 4.) It is no doubt true that a bailee for reward, such as the defendant was, may excuse himself for a failure to deliver the property to the bailor when called for, by showing that the property was taken out of his custody under the authority of valid legal process, and that within a reasonable time he gave notice of that fact to the owner. (*Bliven* v. *H. R. R. R. Co.*, 36 N. Y. 403 ; *W. T. Co.* v. *Barber*, 56 id. 544 ; *Van Winkle* v. *U. S. M. S. S. Co.*, 37 Barb. 122 ; *Livingston* v. *Miller*, 48 Hun, 232 ; *Stiles* v. *Davis*, 1 Black. 101.)

But in this case the persons who took the property had no process that authorized them to do so, and hence the defendant had the right to make such resistance to it as they would have had if the same parties attempted to take it without any process whatever, and if overcome by superior force they could pursue and reclaim it by legal proceedings or otherwise in the same manner as if the search warrant had not been procured. When property in the custody of a bailee for hire is demanded

by third persons, under color of process, it becomes his duty to ascertain whether the process is such as requires him to sur-render the property, and if it is not, then it is his right and duty to refuse and to offer such resistance to the taking, and adopt such measures for reclaiming it, if taken, as a prudent and intelligent man would, if it had been demanded and taken under a claim of right to the property by another without legal process. The defendant did not discharge the duty that it owed to the bailor and owner of the property by merely making a formal protest against entering the vaults where the property was. A person who would allow his own property to be taken from him under like circumstances, and without doing more to prevent such a result, or to repossess himself of it when taken, could scarcely be called a prudent man. It follows that the defendant has not shown that the property was taken from its possession by legal process so as to excuse its loss. The answer presents another very important question arising out of transactions in regard to the property after it was taken from the possession of the defendant. It seems that while the property was in the custody of the district attorney, it was levied upon by parties who were, or claimed to be, creditors of the plaintiff. The answer, as amended before and at the trial, avers the commencement of four different actions against the plaintiff, in which attachments were issued and levied, judgments recovered on some of them, and levies made upon the property in question and sales thereunder and an application of the proceeds upon the judgments, or some of them. The case was tried by the court, without a jury, and while the findings state the commencement of the actions, the issuance of attachments and levy thereunder, the entry of judgment and levy of execution, there is no distinct finding that the proceeds were applied upon any judgment against the plaintiff. While a bailee, who permits the property of the bailor to be taken by a stranger, may excuse himself by showing that he yielded to the power of legal process, it does not follow that a seizure under such process, after the bailee has negligently allowed the property to pass into the

hands of trespassers, or persons who have no right to it, will be any protection to him in an action by the owner. When the defendant permitted the property to be taken from its custody without using proper diligence and care to retain or reclaim it, the plaintiff's cause of action accrued and could not be defeated by the action of parties seeking to establish claims against the owner. The rule in such cases seems to be that when a bailee is sued by the owner for the conversion or negligent loss of the property bailed, it is not a defense or bar to the action to show that after it went into the possession of others, it was levied upon under process against the owner. If it can be shown that the bailor became repossessed of the property, or that it came to his use, or that he had the benefit of it by application through regular legal proceedings upon a judgment against him, such facts will go in mitigation of damages. (2 Greenl. on Ev. § 276; *Ball* v. *Liney,* 48 N. Y. 6; *Wehle* v. *Butler,* 61 id. 245, 249; *Hanmer* v. *Wilsey,* 17 Wend. 91; *Otis* v. *Jones,* 21 id. 394; *Higgins* v. *Whitney,* 24 id. 379; *Sherry* v. *Schuyler,* 2 Hill, 204; *Lyon* v. *Yates,* 52 Barb. 237; *Sprague* v. *McKinzie,* 63 id. 60.; *Peak* v. *Lemon,* 1 Lans. 295; *Pierce* v. *Benjamin,* 14 Pick. 356.)

We do not think that the mere levy of an execution or attachment upon the property by a creditor of the owner while it is in the possession of the tort feasor is available as a defense or in mitigation. It must be shown that the owner had the benefit of it in such a way as to operate in law as a restoration of the property. None of the authorities that have been brought to our attention maintain the proposition that to show a levy alone is sufficient, and such a rule could not be supported in reason or justice. The principles that apply in such cases were stated by EARL, J., in *Ball* v. *Liney* (*supra*), as follows: "After a conversion of property the title still remains in the owner, and the property can be taken from the wrong-doer on an execution against the owner and sold, and the proceeds applied upon his debt, and the owner will thus have the benefit of the property, and in such case, the wrong-doer can set up the seizure and sale, not as an entire

defense, but in mitigation of damages for the reason that it would be unjust for the owner to recover the value of the property after he has thus had the benefit of it. It is not the fact of the seizure that gives the defense, but that it has been seized under such circumstances that the owner has had, or could have the benefit of it." Some of the judgments set up in the answer were shown at the trial to have been released and discontinued, and of course upon such determination of the suits, the attachments and executions fell with them. If any of the property in question was applied upon such judgments the plaintiff therein would be compelled to make restitution, and it is difficult to see how the defendant could derive any greater measure of protection from the suit and the process and judgment therein, than the parties themselves could, had the plaintiff brought an action against them to recover the property or its value. In such a suit the parties who had taken or appropriated the property, could not justify or defend under process or judgment that had been reversed or set aside, and the same rule would apply to the defendant. There was, however, one of the judgments in force at the time of the trial. That was recovered for less than $10,000, and the court found that the property in question when taken was worth about $43,000, but as before remarked, it is not found that any of the proceeds of the property were applied to the satisfaction of this judgment, though there is evidence that would warrant that conclusion. The counsel for the plaintiff requested the court to make numerous findings of fact and law in regard to the manner in which the attachments and executions were served and the levy made, the dissolution of the attachments, the reversal of the judgments and discontinuance of the actions, which the court refused on the ground that they were immaterial. Some of them doubtless were, but many of them were not, and consequently should have been found, as there was no dispute in the evidence in regard to them.

As to the judgment which was in force at the time of the trial, it was claimed by the plaintiff's counsel to have been

entered upon an offer by an attorney for the plaintiff, without authority for that purpose, and in fraud of her rights; that the execution thereon was issued after the attachment was dissolved and that it directed the sale of the attached property in the same manner as if the attachment was in force; that the execution was issued to a person who had no authority to serve it or to sell the property, and that the sale thereunder was itself fraudulent and unfair. There was evidence to support some of these claims, and the court was requested to make specific findings thereon, which requests were refused and for the same reason as the other. The plaintiff had a right to distinct findings as to the amount applied upon any of the judgments, the existence of the judgments themselves, and of the attachments and executions, the manner in which any levy relied upon by the defendant was made and whether any lien was acquired under them, and whether the person who made the sale had authority for that purpose. Without such findings, or at least some of them, it could not be legally determined that the property came to the plaintiff's use or that she had the benefit thereof, as that result depended upon the extent to which the judgments existing against her and not reversed or set aside had been extinguished. In this condition of the case it would be manifestly impracticable for us to attempt to decide what effect is to be given to the suits and proceeding therein, which were instituted against the plaintiff after the property was taken from the defendant, and while in the possession of the district attorney. None of these questions are alluded to in the opinion of the General Term, and so far as they were passed upon at all by the trial court, it seems to have been upon the theory that it was sufficient for all the defendant's purposes to show the issuing of the process and seizure of the property thereunder. Whether these suits and the proceedings in them are available to the defendant in mitigation of damages, and to what extent, are questions to be settled upon another trial or upon further findings of fact.

As we are constrained to differ from the court below in the conclusion that the defendant performed its duty, with refer-

ence to the property, which it held as bailee, we cannot say, as the case now stands, that the plaintiff was not prejudiced thereby.

The judgment should be reversed and a new trial ordered, 'costs to abide the event.

All concur.

Judgment reversed.