MANUEL MIGUEL, Plaintiff and Appellant, *v.* LAUREANO ALVAREZ ET AL., Defendants and Appellees. JOSÉ SALIM ET AL., Plaintiffs and Appellants, *v.* SAME.

Nos. 7140 and 7142. Argued March 30, 1937.—Decided April 28, 1937.

*Pedro G. Quiñones* for appellants.   *Dubón & Ochoteco* for appellees.

Mr. Justice Córdova Dávila delivered the opinion of the court.

José Salim and his wife, Adela Miguel, brought an action for damages substantially alleging in their amended complaint that on or about February 2, 1931, the defendants, without a legal warrant, searched house at No. 9, Isern Street, Santurce, the residence of said plaintiffs, without their consent and aganist their will, while the plaintiff José Salim was absent from his home, and while the other plaintiff Adela Miguel was in her underclothes; that due to the manner in which the defendants made said search, it seemed as if the plaintiffs were charged with keeping stolen goods in their house; that the plaintiffs suffered a great humiliation, which affected their reputation, the plaintiff José Salim sustaining injuries in his credit as a merchant, and that as a consequence of the search the damages caused to the said spouses amounted to not less than $5,000.

Manuel Miguel in his turn brought an action for damages against the same defendants, based on the execution of the said search warrant. In his complaint it is substantially alleged that the defendants searched house at No. 9, Isern Street, in Santurce, which belongs to the plaintiff, without a legal warrant and without the consent of its residents, José Salim and Adela Miguel, while the former was out, and the latter was in her underclothes; that by means of said search it was sought to involve the plaintiff in the alleged fraud of one Pedro Tartak, as if plaintiff was charged with keeping stolen property in his possession; that the plaintiff is a merchant owning assets in excess of $60,000, and that he enjoyed a credit worth some $20,000 in the banks and that, as a result of the search, he has been prejudiced to the full extent of his credit, having suffered, besides humiliation, the loss of

his reputation as a merchant. The damages suffered are estimated at a sum of not less than $15,000.

The defendants denied the essential averments of the complaint and set up as special defenses that the Judge of the District Court of the United States for the District of Puerto Rico issued a search warrant to the United States Marshal authorizing him to search the ground floor of house No. 11 on Republic Street and house No. 9 on Isern Street, both in Santurce; that the order was served by the deputy marshal of said court, accompanied by said defendants at his request, in order to identify the merchandise expected to be found in the searched houses, the defendants having nothing to do with the issuance of the search warrant executed; that the said officer, when he went to said house, besides showing and having in his possession the said search warrant voluntarily obtained permission from the plaintiffs José Salim and Adela Miguel, inhabitants of the house, to search the same, and that no force was used in entering the premises.

Both actions were consolidated for the purposes of the introduction of the evidence, as they were brought against the same defendants, and also involved the same transaction.

The District Court of San Juan found for the defendants in a single judgment. It is alleged that said judgment is contrary to law, and that the court erred in weighing the evidence.

As may be seen, these are two actions brought against several persons who accompanied the deputy marshal of the Federal Court to execute a search warrant. The plaintiffs allege that said warrant is invalid on its face, as it does not comply with the requirements of law, and that the defendants became mere trespassers and are severally liable for the damages caused.

We agree that an officer charged with the execution of an invalid search warrant is reponsible for any damages caused in making the search. *Gummon* v. *Raymond*, 1 Conn. 39, 6

Am. Dec. 200; *Guenther* v. *Day and others,* 6 Gray (Mass.) 490; *Jordan* v. *Henry,* 22 Minn. 245; *Melcher* v. *Scruggs,* 72 Mo. 406; *Hussey* v. *Davis,* 58 N.H. 317; *Johnson* v. *Comstock,* 14 Hun. (N. Y.) 238; *Casselini* v. *Booth,* 77 Vt. 255, 59 A. 833.

The principal case cited in 45 A.L.R. 609, as to the civil liability of persons assisting an officer in executing an invalid search warrant, is that of *Reed* v. *Rice,* 2 J. J. Marshal 44, 19 Am. Dec. 122. In said case the action known at common law as *quare clausum fregit* was brought against the officer charged with the execution of the warrant and against several citizens summoned by the officer to assist in such execution. The court held that even though the search warrant was invalid in that it did not describe the place to be searched, individuals summoned by the officer to assist in its execution were not bound to take notice of its illegality and to refuse to give him aid.

The court, in deciding that the persons thus summoned could not be held liable in trespass for assisting in the execution of such invalid process, expressed itself as follows:

"There is something which instantly strikes the moral sense as being wrong when told that a citizen is regarded as a trespasser for conscientiously aiding to execute the law, as he conscientiously believed at the time. If officiously he undertakes to do it, then he puts his conduct upon his own judgment; and if that deceives, he is responsible; but if he acts under the command of another, and that other, in cases of the kind, may have lawful authority to command him, then we think he ought not to be responsible. In such cases the citizen obeying the officer should be looked upon in the light of a servant, acting by compulsion, and the party injured should seek redress against the officer and those who act 'officiously.'"

In the case of *Cartwright* v. *Canode,* (Tex. Civ. App.) 138 S. W. 792, subsequently affirmed in 106 Tex. 502, 171 S. W. 696, it was held that persons called upon by officers to aid in the execution of a search and seizure warrant issued under authority of an unconstitutional statute, are liable for the damages caused.

In *Roberts* v. *Stuyvesant Safe-Deposit Co.*, 123 N. Y. 57, 25 N.E. 294, 20 Am. St. Rep. 718, 9 L.R.A. 438, it was held that where an officer executing a search warrant takes away property not described in the warrant, persons accompanying said officer in the act of the execution are liable for the trespass.

The doctrine which seems to be the more just is that which imposes civil liability on citizens who act officiously in the execution of a search warrant. In our opinion, persons who are summoned by an officer empowered to do so are not liable.

In the case at bar, the lower court reached the conclusion that the defendants assisted in the execution of the search warrant as persons who were familiar with the property hidden which was being searched, upon the demand of the deputy marshal of the Federal Court and of the Referee in Bankruptcy, and that they accompanied said marshal in order to identify the property found, employing no violence or force during their act and taking no part whatsoever in the issuance of the search warrant.

The said warrant reads as follows:

"Upon the affidavits of Enrique B. Sánchez, filed in this case, it is ordered and directed that the U. S. Marshal search the following premises:

"The lower floor of a house located at No. 11 República St., Santurce, P. R.; and the house located at No. 9 Isern St., Santurce, P. R.

"And seize all merchandise found therein and retain the same in his possession until the further order of this Court.

"San Juan, P. R., February 2, 1931.

"(Sgd.)   Ira K. Wells,
"U. S. District Judge." '

The lower court, in its statement of the case, expressed itself as follows:

"The evidence has shown that in the involuntary bankruptcy proceedings of Pedro M. Tartak the petitioning creditors were Hernaiz Targa & Co., Melón Hnos. & Co. and Catalán González & Co., their counsel being Luis Toro Cabañas; that the defendants Laureano

Álvarez, Rafael Rodríguez, and Francisco Castagnet were creditors or representatives of creditors and that as such they appeared at the meetings before the Referee in Bankruptcy, in relation to this matter; that in said bankruptcy proceedings a large amount of the merchandise of the bankrupt disappeared, and the Bankruptcy Court was informed that said merchandise had been taken to several places in Santurce; that thereupon the Referee in Bankruptcy, Hon. Jesús A. González, suggested the advisability of submitting the matter to the district judge; that at the request of Attorney Toro Cabañas, counsel for the petitioning creditors in the bankruptcy proceedings, it was ordered on February 2, 1931, that Manuel Miguel be summoned before the court, and that on the same day Judge Ira K. Wells, with the intervention of Attorney Toro Cabañas and based upon an affidavit of Enrique B. Sánchez, issued the search warrant, copied above, and which was delivered for its execution to the deputy marshal F. W. Deiter; that this officer following orders from the Referee in Bankruptcy, asked the defendants and a representative of Miranda Hnos. to help him identify the merchandise of the bankrupt, as they knew it; that the marshal Deiter, accompanied by the detectives Secundino Pérez Sánchez and Susano González, whose services he also required, and by the defendants and the representative of Miranda Hnos., went to house No. 11 on Republic Street, the residence of José Francisco, and there he seized the merchandise described in the search warrant; and that then they went to house No. 9 on Isern Street, in Santurce, the property of defendant Manuel Miguel, which is a three-story house. On the first floor Manuel Miguel has a commercial establishment in liquidation, and in an apartment on the third floor José Salim and Adela Miguel lived. The marshal knocked at the door of said apartment, with the search warrant in his hands. Adela Miguel opened the door, wearing a bathrobe or house-coat. She stated that her husband José Salim was not there and thinking it was him, she had opened the door; that it was a heavy bathrobe and that she was well covered, except her feet, because the robe was short. The marshal then told her that he had a warrant to search the house. The evidence is conflicting as to whether Adela Miguel stated that her husband was not there and that they could not enter, or if on the contrary she said that there was nothing and that they could enter if they wanted to. But the fact is that there was no force or violence whatever and that the marshal and the detective entered, once the door was opened, and that Rafael Rodríguez and Francisco Castagnet also entered. As to Laureano Alvarez and the represen-

tative of Miranda Hnos., one of them entered, but it was not shown which one, since detective Pérez Sánchez, the only person who stated that Laureano Alvarez took part in the search, in open court pointed out José Benito Alvarez, a brother of Laureano Alvarez, as the person who had entered the house together with the others. Laureano Alvarez is now in Spain. It is said that Attorney Luis Toro Cabañas also accompanied the marshal Deiter. Both are dead. No merchandise of Pedro Tartak was found in that apartment. Later on Adela Miguel, at the request of the marshal, gave him the keys to two vacant apartments in the same building, and they were also searched. The apartment on the second floor occupied by Juan de León was not searched. And finally, as the floor occupied by the establishment in liquidation of Manuel Miguel was closed, Marshal Deiter, Detective González, and Mr. Castagnet went to the residence of said Manuel Miguel, on Canals Street No. 9, and there the marshal informed him, according to the testimony of the detective, of the purpose of his visit, said Manuel Miguel answering that he would go immediately. When they arrived at the establishment, Manuel Miguel requested to be shown the search warrant, which the marshal did and then he opened the door, according to the testimony of detective Pérez Sánchez. The marshal searched the establishment and he did not find any of the merchandise looked for. It does not appear that the defendants Rafael Rodríguez and Laureano Alvarez and the representative of Miranda Hnos. took any part, or entered the establishment in this search.

"It has not been shown that the defendants, either personally or represented by Attorney Toro Cabañas as counsel for Asociación de Comerciantes, had any intervention in the issuance of the search warrant. They merely accompanied the marshal at his request and at the request of the Referee in Bankruptcy as being familiar with the hidden property, in order to identify it, and they intervened in the manner stated above without force or violence. They did not act officiously but in good faith, and they did not commit the crime defined and punished by section 371 of the Penal Code (Sess. Laws, 1931, p. 400); and in the light of the doctrine established in the sa'd case of *Miguel v. Hernaiz Targa & Co., Succrs., S. en C.,* 46 P.R.R. 376, they were not trespassers, and therefore, they are not responsible."

The appellants invoke the case of *Weaver v. Fike,* 192 S.W. 515. In said case, the defendants requested and obtained the

issuance of an invalid search warrant and then took part in its execution. The Supreme Court of Texas decided that under such circumstances the defendants were liable for the damages caused. We agree that a person who procures and obtains the issuance of an invalid search warrant and aids the officer charged with its execution, is liable for any damages caused by reason of said search. That was our holding in the case of *Miguel* v. *Hernaiz Targa & Co., Succrs., S. en C.* 46 P.R.R. 376. Said case originated in the search which gave rise to these two actions. The District Court of San Juan sustained a demurrer for want of facts sufficient to constitute a cause of action. This court, in reversing the judgment of said lower court, decided that a complaint against persons who, according to the allegations, accompanied the marshal and took part in the execution of an invalid search warrant, and procured and obtained the issuance of said search warrant, which was executed, invading and searching a certain house of the plaintiff, at the instance and urged by the defendants, without the consent or voluntary permission of the plaintiff, states facts sufficient to constitute a cause of action. This court in its opinon said:

"Even if it should be conceded that defendants were free from all criminal responsibility, it would not follow that the complaint fails to state a cause of action. Defendants are presumed to know the law. When they procured an invalid search warrant and intentionally participated in the invasion of plaintiff's property in the manner described in the complaint, they placed themselves *prima facie* at least in the position of trespassers." (Citations.)

In the instant case, it was not alleged or proved that the defendants procured the issuance of the search warrant which is considered void. From the record it does not appear that these defendants had any intervention in the issuance of the warrant, either personally or represented by their attorney. However, it has been shown that they accompanied the Deputy Marshal of the Federal Court at his request and at the request of the Referee in Bankruptcy, for the purpose of iden-

tifying the merchandise which was being sought. The lower court considered that there was no force or violence in the execution of the warrant. We do not think that that court committed manifest error in weighing the evidence, nor that it acted moved by passion, prejudice, or bias.

We think that, according to the jurisprudence cited by us with approval, the defendants can not be considered as trespassers, and that they have not incurred in any liability as regards the plaintiffs.

The judgment appealed from must be affirmed.