MANUEL MIGUEL, demandante y apelante, *v.* LAUREANO ALVAREZ, RAFAEL RODRÍGUEZ y FRANCISCO CASTAGNET, demandados y apelados. JOSÉ SALIM y ADELA MIGUEL, demandantes y apelantes *v.* LAUREANO ALVAREZ, RAFAEL RODRÍGUEZ y FRANCISCO CASTAGNET, demandados y apelados.

Núm. 7140 y 7142.—*Sometidos:* Marzo 30, 1937. *Resueltos:* Abril 28, 1937.

*Pedro G. Quiñones,* abogado de los apelantes; *Dubón & Ochoteco,* abogados de los apelados.

El Juez Asociado Señor Córdova Dávila emitió la opinión del tribunal.

José Salim y su esposa Adela Miguel entablaron una acción sobre daños y perjuicios alegando sustancialmente en su demanda enmendada que allá para el día 2 de febrero de 1931 los demandados, sin tener una orden válida, allanaron la casa número 9 de la Calle Isern de Santurce, residencia de dichos demandantes, sin su consentimiento y en contra de su voluntad, estando el demandante José Salim ausente de la casa y encontrándose la otra demandante, Adela Miguel, en ropas menores; que dada la forma en que los demandados efectuaron dicho allanamiento, parecía que se acusaba a los demandantes de tener propiedades robadas en su casa; que los demandantes sufrieron una gran humillación, que afectó su reputación, teniendo el demandante José Salim mermas en su crédito de comerciante, y que como consecuencia del allanamiento los daños y perjuicios ocasionados a los referidos esposos ascienden a una suma no menor de $5,000.

Manuel Miguel entabló a su vez un litigio sobre daños y perjuicios contra los mismos demandados, basado en el diligenciamiento de la misma orden de allanamiento. En su demanda alega sustancialmente que los demandados efectuaron el allanamiento de la casa número 9 de la Calle Isern, en Santurce, que es de la propiedad del demandante, sin tener una orden válida y sin el permiso de sus moradores José Salim y Adela Miguel, en momentos en que el primero se encontraba fuera de la casa y ésta se hallaba en ropas menores; que con tal allanamiento se pretendía inmiscuir al demandante en el alegado fraude de un tal Pedro Tartak como si se le acusara de tener propiedad robada en su poder; que el demandante es un comerciante que tiene más de $60,000 de capital y gozaba de un crédito de unos $20,000 en los bancos y que como resultado de dicho allanamiento se

le ha perjudicado en casi la totalidad de su crédito, habiendo perdido, además de habérsele humillado, su reputación como comerciante. Los daños ocasionados se valoraron en una cantidad no menor de $15,000.

Los demandados negaron los hechos esenciales contenidos en la demanda y alegaron como defensas especiales que el juez de la corte de distrito de los Estados Unidos para el Distrito de Puerto Rico libró una orden de allanamiento dirigida al márshal de los Estados Unidos autorizándolo a allanar y registrar la planta baja de la casa número 11 de la calle República y la casa número 9 de la calle Isern, ambas en Santurce, que la orden fué diligenciada por el márshal auxiliar (*deputy marshal*) de dicha corte, acompañado de dichos demandados a su requerimiento, con el objeto de ayudar a identificar la mercancía que se esperaba encontrar en las casas allanadas, sin que los demandados tuvieran nada que ver con la expedición de la orden de allanamiento diligenciada; que el referido funcionario, al personarse en la casa mencionada, además de ostentar y tener en su poder la orden de allanamiento referida, obtuvo voluntariamente permiso de los demandantes José Salim y Adela Miguel, moradores de la casa, para registrar la misma, no penetrándose en ésta violentamente.

Ambos litigios fueron acumulados a los efectos de la presentación de evidencia, por estar dirigidos contra los mismos demandados y tratarse de la misma transacción.

La Corte de Distrito de San Juan declaró sin lugar las demandas en una sola sentencia. Se alega que dicha sentencia es contraria a derecho y que se incurrió en error al apreciar la prueba.

Como se ve, se trata de dos litigios promovidos contra varias personas que acompañaron al márshal auxiliar de la Corte Federal al acto de diligenciar una orden de allanamiento. Alegan los demandantes que la referida orden es nula en su faz, por no cumplir con los requisitos que señala la ley y que los demandados se colocaron en la posición de

transgresores (*trespassers*), siendo solidariamente responsables de los daños y perjuicios causados.

Convenimos en que el funcionario encargado de diligenciar una orden de allanamiento nula es responsable de los daños que se originen al realizar el allanamiento. *Grumon* v. *Raymond,* 1 Conn. 40, 6 Am. Dec. 200; *Guenther* v. *Day,* 6 Gray (Mass.) 490; *Jordan* v. *Henry,* 22 Minn. 245; *Melcher* v. *Scruggs,* 72 Mo. 406; *Hussey* v. *Davis,* 58 N. H. 317; *Johnson* v. *Comstock,* 14 Hun. (N. Y.) 238; *Casselini* v. *Booth,* 77 Vt. 255, 59 Atl. 833.

El caso principal, citado en 45 A.L.R. 609, en cuanto a la responsabilidad civil de aquellas personas particulares que participan, acompañando al funcionario, en el diligenciamiento de una orden de allanamiento nula, es el de *Reed* v. *Rice,* 2 J. J. Marshall 44, 19 Am. Dec. 122. En dicho caso se promovió la acción conocida en el derecho común con el nombre de *quare clausum fregit,* contra el funcionario encargado de diligenciar la orden y contra varios ciudadanos que a requerimiento de dicho funcionario participaron en el diligenciamiento. La corte resolvió que aunque la orden era nula, por no describir el sitio que había de ser allanado, aquellas personas particulares requeridas por el funcionario encargado de diligenciarla para que le ayudaran a efectuar el allanamiento, no estaban obligadas a tomar conocimiento de la ilegalidad de dicha orden y a negarse a prestar la ayuda solicitada.

La corte, al resolver que las personas así requeridas no podían ser responsables por ayudar a ejecutar el procedimiento inválido, se expresó del modo siguiente:

"Hay algo que instantáneamente hiere el sentido moral y hace patente el error cuando se dice que un ciudadano debe considerarse como un intruso (*trespasser*) por ayudar conscientemente a ejecutar la ley en la que conscientemente confía en el momento de hacerlo. Si este ciudadano actúa oficiosamente, entonces su conducta depende de su propio juicio, y si se equivoca, es responsable; pero si actúa bajo el mandato de otro, que en casos de esta naturaleza pueda tener

autoridad legal para mandarlo, entonces no creemos que deba ser responsable. En tales casos los ciudadanos que obedecen al funcionario deben ser considerados como sirvientes que actúan por compulsión, y la parte perjudicada debe dirigirse contra el funcionario o contra aquéllos que actuaron oficiosamente.''

En el caso de *Cartwright* v. *Canode*, Tex. Civ. App., 138 S. W. 792, confirmado posteriormente en 106 Tex. 502, 171 S. W. 696, se resolvió que una persona que ayuda a diligenciar una orden de allanamiento a requerimiento del funcionario encargado de efectuar tales diligencias, es responsable de los daños que se causen, si la orden fué expedida en virtud de una ley anticonstitucional.

En *Roberts* v. *Stuyvesant Safe-Deposit Co.*, 123 N. Y. 57, 25 N. E. 294, 20 Am. St. Rep. 718, 9 L.R.A. 438, se resolvió que si al diligenciar una orden de allanamiento el funcionario encargado de hacerlo se apodera de bienes no descritos en la orden, las personas que acompañaren a dicho funcionario en el acto de tal diligenciamiento son responsables de una transgresión.

La doctrina que parece más justa es aquélla que fija responsabilidad civil en los casos en que las personas particulares actúan oficiosamente en un allanamiento de morada. No son responsables, a nuestro juicio, las personas que respondan al requerimiento de un funcionario con autoridad para hacerlo.

En el presente caso la corte inferior establece la conclusión de que los demandados concurrieron al diligenciamiento de la orden de allanamiento como conocedores de la propiedad ocultada que se buscaba, a requerimiento del márshal auxiliar de la Corte Federal y del Juez de Quiebra, acompañando a dicho márshal para identificar la propiedad que se encontrase, sin que durante su actuación empleasen fuerza o violencia ni interveniesen para nada en la expedición de la orden de allanamiento.

La referida orden dice así:

"En virtud de declaraciones juradas de Enrique B. Sánchez, radicadas en este caso, se ordena y manda que el Márshal de los Estados Unidos registre las siguientes premisas:

"El piso bajo de una casa situada en la calle República, núm. 11, de Santurce, P. R., y la casa situada en la calle Isern, núm. 9, Santurce, P. R.;

"Y que se apodere de toda la mercancía que encuentre en la misma y la retenga en su posesión hasta recibir órdenes posteriores de esta Corte.

"San Juan, P. R., febrero 2 de 1931.

(fdo.) *Ira K. Wells,*
*Juez de Distrito de los Estados Unidos.*"

La corte inferior, en la relación del caso, se expresó del modo siguiente:

"La evidencia ha demostrado que en la quiebra involuntaria de Pedro M. Tartak los acreedores peticionarios eran Hernáiz Targa & Co., Melón Hnos. & Co. y Catalán González & Co., siendo su abogado el Lic. Luis Toro Cabañas; que los demandados Laureano Alvarez, Rafael Rodríguez y Francisco Castagnet eran acreedores o representantes de acreedores y como tales comparecieron a las reuniones ante el Juez de Quiebra, en relación con el asunto; que en dicha quiebra desapareció una gran parte de la mercancía del quebrado y se informó a la Corte de Quiebra que dicha mercancía había sido trasladada a distintos lugares de Santurce; que entonces el juez de quiebra, Hon. Jesús A. González, aconsejó la conveniencia de tratar el asunto con el juez de la corte; que a solicitud del Lic. Toro Cabañas, como abogado de los acreedores peticionarios de la quiebra, se ordenó en 2 de febrero de 1931 la citación de Manuel Miguel para comparecer ante la corte, y en el mismo día el juez Hon. Ira K. Wells, con la intervención del Lic. Toro Cabañas, y fundado en una declaración escrita de Enrique B. Sánchez, expidió la orden de allanamiento, copiada anteriormente, y la cual se entregó para su diligenciamiento al márshal auxiliar F. W. Deiter; que este funcionario, siguiendo instrucciones del Juez de Quiebra, requirió a los demandados, así como a un representante de Miranda Hnos., para que les ayudasen en la identificación de la mercancía del quebrado, como conocedores de la misma; que el márshal Deiter, acompañado de los detectives Secundino Pérez Sánchez y Susano González, cuyos au-

xilios también solicitó, y de los demandados, así como del represen-
tante de Miranda Hnos., estuvieron en la casa de la Calle República
núm. 11, residencia de José Francisco, y allí se ocupó la mercancía
descrita en el diligenciamiento de la orden de allanamiento; y que
entonces se trasladaron a la casa núm. 9 de la calle Isern, de San-
turce, propiedad del demandante Manuel Miguel, y cuya casa es de
tres plantas. En el primer piso Manuel Miguel tenía un estableci-
miento mercantil en liquidación, y en un apartamento del tercer
piso residían José Salim y Adela Miguel. El márshal tocó a la
puerta de este apartamento, teniendo en su poder la orden de alla-
namiento. Adela Miguel abrió, estando en bata de baño o de casa.
Ella declara que su esposo José Salim no estaba allí, y creyendo
que era él, abrió la puerta; que la bata era gruesa y se cubrió bien,
excepto los pies, porque era corta. El márshal le informó entonces
que tenía una orden para allanar la casa. La evidencia es contra-
dictoria en cuanto a si Adela Miguel manifestó que su esposo no
estaba allí y que no podían entrar, o si por el contrario, dijo que
podían pasar, si querían, que allí no había nada. Pero es un hecho
cierto que no hubo fuerza ni violencia de ningún género y que el
márshal y el detective entraron, después de abierta la puerta, en-
trando también Rafael Rodríguez y Francisco Castagnet. En cuanto
a Laureano Alvarez y el representante de Miranda Hnos., uno u otro
entró, no demostrándose cuál de ellos fuera, pues el detective Pérez
Sánchez, único que afirmó que dicho Laureano Alvarez había parti-
cipado en el allanamiento y registro, señaló en corte abierta a José
Benito Alvarez, hermano de Laureano Alvarez, como la persona que
había entrado en la casa en unión de los demás. Laureano Alvarez
está ahora en España. Se dice que el Lic. Luis Toro Cabañas tam-
bién acompañaba al márshal Deiter. Ambos han fallecido. Nin-
guna mercancía de Pedro Tartak se encontró en ese apartamento.
Luego Adela Miguel, a petición del márshal, le entregó las llaves de
dos apartamentos que estaban desocupados en la misma casa y que
se tenían para alquilar, y también se registraron. El apartamento
del segundo piso, ocupado por Juan de León, no se registró. Y final-
mente, como la planta donde estaba el establecimiento en liquidación
de Manuel Miguel estaba cerrada el márshal Deiter, el detective Gon-
zález y el Sr. Castagnet fueron a la casa vivienda de dicho Manuel
Miguel, en la calle Canals núm. 9, y allí el márshal le informó, según
el testimonio del detective, del propósito de su visita, contestando
dicho Manuel Miguel que iría en seguida. Ya en el establecimiento,
Manuel Miguel pidió que se le mostrara la orden de allanamiento, lo
que hizo el márshal, y abrió entonces la puerta, según la declaración

del detective Pérez Sánchez. El márshal registró el establecimiento y tampoco se encontró mercancía de la que se buscaba. No aparece que en este registro tomaran participación alguna ni que entraran al establecimiento, los demandados Rafael Rodríguez y Laureano Alvarez ni el representante de Miranda Hnos.

"No se ha demostrado que para la expedición de la orden de allanamiento intervinieran los demandados ya personalmente, ni representados por el Lic. Toro Cabañas, o como abogado de la Asociación de Comerciantes. Meramente, a requerimientos del márshal y del juez de quiebra, y como conocedores de la propiedad ocultada que se buscaba, acompañaron al márshal para su identicación e intervinieron en la forma anteriormente expuesta, sin empleo de fuerza ni violencia. No actuaron oficiosamente, lo hicieron de buena fe y sin cometer el delito previsto y castigado en el art. 371 del Código Penal (Leyes de 1931 p. 401); y con vista de la doctrina establecida en el referido caso de *Miguel* v. *Hernaiz Targa & Co.,* 46 D.P.R. 389, no se colocaron en la posición die transgresores y, por tanto, no son responsables."

Los apelantes invocan en su apoyo el caso de *Weaver* v. *Ficke,* 192 S. W. 515. En dicho caso los demandados instaron y obtuvieron la expedición de una orden de allanamiento nula y luego participaron en el diligenciamiento de la misma. La Corte Suprema de Tejas resolvió que bajo tales circunstancias los demandados eran responsables de los daños y perjuicios causados.

Convenimos en que una persona particular que solicite y obtenga la expedición de una orden de allanamiento nula y luego ayude al funcionario encargado de diligenciarla, es responsable de los daños y perjuicios que se causen con motivo de tal allanamiento. Así lo sostuvimos en el caso de *Miguel* v. *Hernaiz Targa & Cía., et al.,* 46 D.P.R. 389. Dicho pleito tuvo su origen en el allanamiento que ha dado lugar a estos dos litigios. La Corte de Distrito de San Juan sostuvo una excepción previa de falta de hechos constitutivos de una causa de acción. Este tribunal, al revocar la sentencia dictada por dicha corte inferior, resolvió que una demanda incoada contra personas que, según las alegaciones, acompañaron al márshal y participaron en el diligencia-

miento de una orden de allanamiento nula, y solicitaron y obtuvieron la expedición de la referida orden de allanamiento, que fué diligenciada, invadiendo y registrando determinada casa de la propiedad del demandante, a instancias e incitación de los demandados, sin el consentimiento y contra la voluntad expresa de dicho demandante, aduce hechos suficientes para determinar una causa de acción.

En el curso de su opinión este tribunal se expresó así:

"Aun si pudiera admitirse que las demandadas estaban exentas de toda responsabilidad criminal, no por ello es de inferirse que la demanda deja de alegar una causa de acción. Se presume que las demandadas conocen la ley. Cuando lograron que se expidiese una orden de allanamiento nula e intencionalmente participaron en la invasión de la propiedad del demandante en la forma descrita en la demanda, se colocaron a sí mismas, por lo menos prima facie, en la posición de transgresores (*trespassers*). (Citas.)

En el presente caso no se alegó ni probó que los demandados hubiesen solicitado la expedición de la orden de allanamiento que se considera nula. No surge de los autos que estos demandados interviniesen para nada en la expedición de la orden, ya personalmente o representados por su abogado. Se ha demostrado, sin embargo, que acompañaron al márshal auxiliar de la Corte Federal a requerimiento de éste y del Juez de Quiebra, con el fin de identificar la mercancía que se estaba buscando. La corte inferior estimó que no se empleó fuerza o violencia en el diligenciamiento de la orden. No creemos que dicho tribunal haya incurrido en error manifiesto al apreciar la prueba ni que actuara movido por pasión, prejuicio o parcialidad.

Entendemos que de acuerdo con la jurisprudencia que hemos citado, impartiéndole nuestra aprobación, los demandados no pueden ser considerados como transgresores (*trespassers*), y que por lo tanto no han incurrido en responsabilidad para con los demandantes.

*Debe confirmarse la sentencia apelada.*