## TINPLATE PURCHASING CORPORATION, Respondent, *v.* TUTEUR & Co., INC., Appellant.

Second Department, March 14, 1961.

*Seligson, Morris & Neuburger* (*David Sive* of counsel), for appellant.

*Yellin & Levy* (*Sol H. Yellin* and *Sydney G. Platzer* of counsel), for respondent.

CHRIST, J. The action is for recovery of damages sustained by plaintiff as the result of the alleged breach by defendant of two settlement agreements, under each of which certain tinplate belonging to plaintiff was stored in a warehouse of a third party in Naples, Italy. While so stored an Italian official seized custody of the tinplate in pursuance of legal process in the nature of an attachment issued by a court in Italy. The alleged breach of the agreements is defendant's failure to comply with plaintiff's demand, made after such seizure, for return of the tinplate.

Originally, this tinplate had been a part of certain sales by plaintiff to defendant and of resales by defendant to the warehouse owner, A. Bevilacqua & C. After the arrival of the goods in Italy, Bevilacqua rejected those portions now in question. Following such rejection plaintiff and defendant reached the settlement agreements upon which this action is based. The purpose of such agreements was to provide for adjustments satisfactory to the three merchants involved. Each agreement pertained to a separate part of the rejected goods, and each is spelled out on the basis of telephone conversations and correspondence between the representatives of the parties to this action. One agreement was reached in June, 1957; the other was reached about July 31, 1957.

Each agreement provided for plaintiff to give defendant certain monetary credits, and for defendant to make repayment to Bevilacqua. Title to the rejected goods reverted to plaintiff, but the defendant was to. store them in Bevilacqua's warehouse in Italy and hold them subject to plaintiff's further orders, with the view of trying to sell them for plaintiff. The provisions with respect to the credits to defendant, repayment to Bevilacqua, and the holding of the goods in Bevilacqua's warehouse have been carried out.

However, before the tinplate could be resold, it was seized by an Italian official, pursuant to legal process. The process had been issued on January 13, 1958, in a lawsuit brought by Bevilacqua against defendant for damages sustained by Bevilacqua because, by way of replacement for the rejected goods, it bought other goods at a price higher than the price specified in its contract with defendant. Bevilacqua also included in its damages a claim for reimbursement of its expenses. The seizure took place on January 23, 1958, and defendant with reasonable promptness notified the plaintiff.

The judgment under review awarded plaintiff damages for the value of the tinplate. Such award was based on the learned trial court's finding that a bailment for mutual benefit existed here, and on its holding that under such a finding the defendant was not exonerated from liability for the goods even though the seizure in Italy was pursuant to judicial process and even though notice was given to the plaintiff bailor.

The defendant contends that there are additional facts or special circumstances beyond the bare creation of a bailment, and that such facts or circumstances take this case out of the rule enunciated by the trial court.

The evidence shows these five special circumstances:

(1) In connection with the first agreement, plaintiff's letter to defendant, dated June 14, 1957, contained the statement that defendant was " to be held harmless in settling the matter."

(2) The defendant's two debit memoranda which were accepted by plaintiff, contained the statement: " We are holding this material for your account and at your risk on the premises of Bevilacqua, and await your further disposal instructions."

(3) The credits to defendant included, not only reimbursement for freight, duty, insurance and other charges incurred by defendant, but also 50% of what defendant's profits would have been on the rejected goods.

(4) The plaintiff's representative told defendant's representative, in many conversations over a period of about a half year

after the making of the agreements, that there was no urgency as to ultimate disposal of the goods and that it would be more profitable to wait until February, or even May, of the following year (1958).

(5) After the goods were subjected to the legal process, plaintiff's letter to defendant, dated February 12, 1958, requested defendant to have its representative try to obtain release of the goods by amicable settlement with Bevilacqua; it noted the necessity to employ a lawyer in Naples; and it stated: " This letter authorizes you to take care of this matter on our behalf and for our account."

In our opinion, the intention of the agreements was to relieve the defendant of further responsibility for the goods, except to assist in their resale. In the light of all the evidence, the phrase " at your risk," must be deemed to encompass the entire burden of the goods as between plaintiff and defendant. Such phrase was not limited to the hazards of fire and theft, against which it is customary to procure insurance. The very first memorandum containing this phrase was enclosed with a letter which stated that insurance was being taken out against these specific hazards.

The principle of law applied by the trial court is appropriate in bailments for mutual benefit only under certain conditions. The general rule is that, where goods are taken from a bailee for mutual benefit by lawful authority invoked at the instance of a third party, the bailee is under a duty to contest the seizure, protecting the goods as though they were his own. However, the bailee is exonerated from liability where the bailed goods have been seized in a suit against the bailor, provided the bailee gave notice of the taking within a reasonable time, so as to permit the bailor to litigate in his own behalf (*MacDonnell* v. *Buffalo Loan, Trust & Safe Deposit Co.*, 193 N. Y. 92, 106; *Roberts* v. *Stuyvesant Safe Deposit Co.*, 123 N. Y. 57, 65–66; 8 C. J. S., Bailments, § 37, subd. c, par. [2]; 6 Am. Jur., Bailments, §§ 109–112). Whether the process was directed against the bailor is a vital fact in the application of the rule.

The case of *Barnard* v. *Kobbe* (54 N. Y. 516) and the case of *Bliven* v. *Hudson Riv. R. R. Co.* (36 N. Y. 403) are not necessarily to the contrary. In any event, these two cases are overshadowed by the *MacDonnell* and *Roberts* cases (*supra*), subsequently decided.

Since the attachment was not directed against plaintiff, and since defendant did not establish that it contested the seizure, the above-mentioned rules, if applicable, would indeed justify the conclusion that defendant was liable to plaintiff for failure to return the goods.

However, it is our opinion that said rules are not applicable to the facts in this case. The agreements were instinct with an exemption from the usual responsibilities of a bailee for mutual benefit, as shown by the evidential factors enumerated above. We lay particular emphasis on: (1) the agreement that the goods were to be actually in Bevilacqua's possession, with plaintiff's knowledge and consent, and subject to plaintiff's further orders; and (2) on the fact that they were to be kept there " at your [plaintiff's] risk ". Further, plaintiff itself recognized that the risk had been its own, in that its letter of February 12, 1958 plainly authorized defendant to act on plaintiff's " behalf " and " account," and to engage a lawyer to act for plaintiff for the purpose of procuring return of the goods.

In this view of the agreement, we find there was no obligation on the part of defendant to plaintiff that defendant may be said to have breached. Plaintiff failed to establish any right of action against defendant, and the complaint should have been dismissed.

No proof was adduced by defendant that would entitle it to recover on its counterclaims.

The judgment should be modified accordingly on the law and the facts, with costs to defendant.

BELDOCK, J. (dissenting). There is no dispute that title to the attached property was in plaintiff; nor is there any dispute that the warrant of attachment in Italy was directed solely against defendant and *its* property, and not against plaintiff or its property. This warrant afforded no excuse to defendant for the removal from its custody of the plaintiff's property. Insofar as plaintiff's property was concerned, the warrant was not valid legal process. In attaching plaintiff's property, the authorities in Italy were trespassers, and the defendant, as bailee, was bound to oppose such attachment. Defendant was negligent in failing to use proper care either to retain plaintiff's property or to reclaim it after it was taken (*Roberts* v. *Stuyvesant Safe Deposit Co.*, 123 N. Y. 57; *Barnard* v. *Kobbe*, 54 N. Y. 516).

The fact that defendant gave notice of the attachment to plaintiff is immaterial. Such notice would be a requirement only if the attachment was directed against plaintiff or upon its property; here the attachment was directed against defendant and upon its property. Plaintiff's assumption of risk was obviously not with respect to process directed solely against defendant. The authorization on February 12, 1958, by plaintiff to defendant, to hire counsel meant merely that plaintiff was willing to pay the legal expense to protect its property; the author-

ization did not mean that plaintiff was willing to absolve defendant from all responsibility in connection with process issued against the defendant.

NOLAN, P. J., KLEINFELD and PETTE, JJ., concur with CHRIST, J.; BELDOCK, J., dissents in opinion.

Judgment modified on the law and the facts as follows: (1) by striking out the first decretal paragraph awarding $15,107.51 to plaintiff against defendant; (2) by striking out the second decretal paragraph dismissing the defendant's affirmative defenses and counterclaims; (3) by substituting one paragraph dismissing the complaint, with costs to defendant; and (4) by substituting another paragraph dismissing the defendant's counterclaims.

As so modified, the judgment is affirmed, with costs to defendant.

Findings of fact which may be inconsistent with the views expressed in the majority opinion are reversed, and new findings of fact in accordance with such opinion are made.